McMARSHALL v. ·THE CHICAGO, ROCK ISLAND AND
PACIFIC RAILWAY COMPANY.

1. **Railroads**: DEATH OF PERSON ON SWITCH TRACK: NEGLIGENCE:
PLEADING: EVIDENCE: INSTRUCTIONS. In an action for the death of
plaintiff's intestate, who was struck and killed by defendant's
engine upon its switch track, the petition alleged that defendant
was negligent in that the engine was managed and controlled by
incompetent employes, and in that said employes failed to see the
deceased in time to give any alarm signal. The evidence showed
that other persons, who were not specially charged with the duty
of watching the track, saw the deceased before he was struck, and
it revealed no reason why defendant's employes should not have
seen him, and showed, also, that the man in charge of the engine
was a fireman, and that he failed to stop the engine with prompt-
ness. *Held* that the court was warranted, both by the pleadings
and evidence, in submitting to the jury the questions whether
defendant's employes were negligent in not being on the lookout
for persons on the track, and whether the engine was in the control
of a competent person.

2. ——— : ——— : ——— : CONFLICT OF EVIDENCE. Where, in such
case, two witnesses testified that the bell was rung, and two
witnesses, who were at the scene of the accident, testified that
they did not hear it, there was a conflict of evidence, and the
question was properly submitted to the jury.

3. ——— : ——— : INSTRUCTION : DUTY TO EMPLOYES ON OTHER ADJA-
CENT ROADS. The person killed in such case was the conductor of
a train on another road, whose switch track lay adjacent to defend-
ant's, and the deceased stepped upon defendant's track to signal
the engineer of his train. The court instructed that a joint
occupancy of ground for railroad tracks by two or more companies
will impose on each the duties to the employes of the other, neces-
sarily using the track, which it owes to its own employes. *Held*
to be a correct statement of a principle of law, and not vulnerable
to the objection that it assumed that the occupancy of the ground
was joint, and that the use of it by the deceased was necessary.

4. ——— : ——— : ——— : TRESPASS BY EMPLOYE OF ANOTHER ROAD
ON ADJACENT TRACK. In such case the court properly instructed
that if the deceased, and other employes of the company which he
served, had, for a considerable time prior to the accident, been
accustomed to use the track of the defendant company, at and
near the place of the accident, for the purpose of giving signals,
with the acquiescence of the defendant company, then the deceased
was not a trespasser on the track.

McMarshall v. The Chicago, R. I. & P. Ry. Co.

5. **Verdict:** FAILURE TO ANSWER SPECIAL INTERROGATORIES. Where the jury, in answer to one special interrogatory, said, "We cannot say," and to another, "We do not know," this was, in effect, a finding that there was no evidence on the subject; and the failure to return categorical answers did not vitiate the general verdict, because it was supported by evidence on other points, and no possible answers to the interrogatories could have been ground for setting it aside.

6. **Railroads:** DUTY TO EMPLOYES OF OTHER COMPANIES IN COMMON SWITCH YARDS. Where several railroad companies have a common switch yard, but each its own tracks, lying adjacent to one another, and the conductor of a train on his own track steps upon the adjacent track of another company for the purpose of signaling his engineer, the company on whose track he thus steps owes him the same duty as to caring for his safety as it would owe to one of its own employes, in the same position and under the same circumstances, in the discharge of a similar duty.

7. ——— : ——— : DUTY OF EMPLOYES TO LOOK AND LISTEN. The rule that one going upon the track of a railroad is required to look and listen for approaching trains; does not apply to the conductor of a train who, in a common switch yard, steps upon the adjacent track of another company for the purpose of signaling his engineer.

8. ——— : DEATH ON TRACK : UNDUE SPEED : VIOLATION OF CITY ORDINANCE. In an action for the death of a person killed by defendant's engine on its switch track, an instruction that the running of the engine at a speed in violation of the city ordinance was evidence of negligence, was warranted, where the jury could well have found that the deceased trusted to defendant's employes to obey the law, and that the engine might have been stopped in time to avoid the accident had it been running at lawful speed.

9. **Damages:** LIMITED BY PETITION : INSTRUCTIONS. In an action for death by negligence, the court instructed that plaintiff was entitled to such reasonable sum as damages as the death of the deceased had occasioned, but that in no event could the sum exceed twenty-five thousand dollars, the sum claimed. *Held* not open to the objection that it directed the jury to find in the sum of twenty-five thousand dollars.

*Appeal from Lee District Court.*—HON. J. M. CASEY, Judge.

FILED, JUNE 5, 1890.

ACTION to recover for personal injuries received by plaintiff's intestate, resulting in his death, while in the

employment of defendant in the operation of its railroad. The injuries were caused by the negligence of defendant's employes. There was a judgment upon a verdict for plaintiff. Defendant appeals.

*Thos. S. Wright* and *Craig, McCrary & Craig,* for appellant.

*Dodge & Dodge, A. H. Stutsman* and *Jas. C. Davis,* for appellee.

BECK, J.—I. Plaintiff's intestate, A. L. Kern, was in his lifetime in the employment of the St. Louis, Keokuk and Northwestern Railroad Company as a train conductor. He was in charge of a train engaged in moving ice from the canal above the defendant's railway station at Keokuk to an icehouse below. At the time of the accident he detached the engine from the cars in his train, and coupled it "head on" to some box cars. The defendant had a track a few paces south of the track of the St. Louis, Keokuk and Northwestern railroad, upon which the intestate stepped for the purpose of giving or receiving signals from the engineer, or the person in charge of the engine. Defendant's switch engine, which was at the time approaching, struck the intestate, causing his death. The tracks upon which the intestate's train was stopped, and the one upon which he was struck by defendant's engine, were seven or eight feet apart, and were used by the railroad company, whose road entered Keokuk, for the purpose of switching, and the locality is called the "Union Railway Yards" of the city. The petition sets out the cause of action in the following language, which we quote, for the reason that certain questions discussed by counsel arise upon the allegations of the petition. After stating that defendant sues as administrator of Kern, the petition proceeds to allege "that on the eleventh of January, 1887, said Kern was a railway conductor, operating a train on the St. Louis, Keokuk and Northwestern railroad, and, while in the discharge

of his duties, in the Union railway yards in the city of Keokuk, and, while in the exercise of ordinary care and caution, was struck, run over and killed by a switch engine belonging to defendant, and operated and run in said yards, on one of defendant's tracks therein, in a grossly careless and negligent manner, in that the kind of engine used was unskilfully constructed, so as to prevent a person on the track in front of said engine being seen by persons in charge thereof, and in not being equipped with proper appliances to enable the speed to be checked within a reasonable time and distance and in that the said engine was run at a high and unlawful rate of speed; and in that the same was managed and controlled by incompetent employes; and in that the said employes failed to see said deceased in time to give any alarm signal, and failed to give the usual and necessary signals of approaching danger, so as to warn deceased of the approach of said engine; that deceased was about thirty-five years of age, a skilled workman, capable of earning large sums of money, and of sound health and industrious habits. Wherefore complainant claims judgment for the sum of twenty-five thousand dollars." The answer, in general language, denies all the allegations of the petition.

II. The questions raised in the case may be more briefly and conveniently discussed by considering them in the order of their presentation by defendant's counsel.

The first objection argued by defendant's counsel is directed at the eighth instruction given by the court to the jury, which is in this language: "The degree of care to be exercised by a railroad company must necessarily depend upon the location of the track and the circumstances of the case. In a place not frequented by the public, either by right or permission, expressed or implied, of the company, and in locations where people are not constantly passing about, and where they cannot reasonably be expected to be, persons in charge of a train are not required by law to be on the lookout for

1. RAILROADS: death of person on switch track: negligence: pleading: evidence: instructions.

them. In such cases, the company is entitled to the exclusive use of the track, and the persons in charge of the train are only required to avoid injury to them if they can do so upon becoming aware of their peril. But when the place is within the limits of a city, in the yard of a company, or yard used by several companies together, or with tracks in close proximity to each other, and employes of companies whose tracks are in close proximity are engaged in the discharge of their duties, the safety of human life requires a different rule; and in this case, if you find that deceased was an employe of one of said roads in the line of his duty, and the employes of defendant were not on the lookout for such persons, and had their engine in possession, or under the control, of an incompetent person, if it was, and were running at a dangerous and unlawful rate of speed, if it was, and the injury was inflicted by reason of the want of proper care on the part of the defendant, if it was, the defendant would be guilty of negligence." It is insisted that this instruction is erroneous, in that it submits to the jury two questions of negligence, thus stated by defendant's counsel: "*First*, whether defendant's employes were on the lookout for persons on the track; and, *second*, whether defendant's engine was in the control of an incompetent person." The error of the instruction, in counsel's view, is that the petition is specific in its allegations of negligence, and, as there were no allegations as to the facts suggested by these questions, the inquiries should not have been submitted to the jury by the instruction; in other words, as there were no specific allegations of negligence to the effect that defendant's employes "were not on the lookout," and the engine was not in the control of an incompetent person. As to the first part of the objection, the petition alleges that defendant's employes "failed to see the intestate in time to give any alarm signal." Now, if the employes were not on the lookout, they surely failed to see deceased. A failure to "look out" was, in effect, a failure to see

deceased. If the employes failed to look out, they negligently failed to see the deceased. It will be observed that the court quite correctly directed the jury as to the duty of the defendant's employes, at the place where the accident happened, "to look out" for persons on the track. The negligence alleged in the petition is a failure to see intestate. "A failure to see" would follow "a failure to look out." Hence the negligence set out in the petition and the instruction is the same, as it is the result of the same omission.

III. It is asserted that there was no evidence that defendant's employes failed "to look out." Surely, if other persons at the scene of the accident, not specially charged with the duty of watching the track before the engine which struck intestate, saw him before he was struck, the employes operating the engine, it could well be inferred, did not "look out." If they had been watching the track they would have seen him. They, therefore, did not look out.

IV. The man in charge of the engine was a fireman. This fact, together with the failure to promptly stop the engine, either because it was running at too high rate of speed or because he was not capable of stopping it with promptness, tend to show his incompetency as an engineer.

V. Counsel maintain that the court erred in submitting the issue to the jury involving the question whether 2. —:—: conflict of evidence. signals were given. Upon this point there is a conflict of evidence. Defendant's witnesses testify the bell was rung. Two witnesses at the scene of the accident testify that they did not hear it. The issue was rightly submitted to the jury.

VI. An instruction—the ninth—directed the jury, in effect, that a joint occupancy of ground for railroad 3. —:—: instruction: duty to employes on other adjacent roads. tracks by two or more companies will impose on each the duty to the employes of the other, necessarily using the tracks, which it owed to its own employes. This instruction is complained of, on the ground that it

McMarshall v. The Chicago, R. I. & P. Ry. Co.

assumes the fact that the occupancy of the ground was joint, and the use by the employes was necessary. We do not so understand it. The instruction well stated the principle of law as a formula. The jury could, by no possibility, have understood that they were instructed as to the facts.

VII. The twelfth instruction, which is complained of by defendant, is in this language: "If you find from the evidence that the deceased and other employes of the St. Louis, Keokuk and Northwestern Railway Company had, for a considerable time prior to the accident, been accustomed to use the track of the defendant railroad company, at and near the place where the accident occurred, for the purpose of using the same for giving signals by the acquiescence of the company, then the deceased was not a trespasser upon the track, and such permission may be implied if the deceased and other employes of said St. Louis, Keokuk and Northwestern Railway Company were in the habit of so using the railroad of defendant without objections on its part; and it is for you to determine, from all the facts in evidence before you, whether or not deceased had such permission." The instruction is clearly correct. It contemplates a state of facts showing that the intestate was on the track under a custom authorizing signals by employes of the other roads to be made therefrom. These signals were for the protection and security of life and property,—of the lives of defendant's employes, and of defendant's property, as well as for the safety of the property and security of the employes of the other railroad company. When tracks of two or more railroads are so near together, or are crossing or running into one another, the safety of all persons concerned in operating the road at that point, and the protection of the property of all the companies, demand that signals should be fully given, and authority to use the different tracks is inferred. It would be absurd to hold intestate a trespasser or negligent in doing just what defendant's

employes have done, and ought to continue to do. The cases cited by defendant's counsel in support of his position on this point do not contain the element that the persons on the track were other railroad men, whose duty called them there for the protection of the life and property of the railroad company whose track was used in the discharge of that duty.

VIII. Certain questions were asked the jury, their answers to be regarded as special findings. The questions and answers are as follows: "*First.* Could A. L. Kern have seen the engine of defendant company if he had looked in the direction of its approach at the time he stepped onto the track? *A.* We cannot say. "*Second.* Did Kern look in the direction of the approaching engine when he stepped on the track? *A.* We do not know."

5. VERDICT: failure to answer special interrogatories.

Counsel think the failure of the jury to answer the questions vitiates the general verdict. We are of the contrary opinion. The answers are to be understood as a reply to the effect that there is no evidence upon the point. Now, in the absence of such evidence, the jury could have found proper care exercised by deceased upon other evidence. The duty he had to discharge, requiring him to go on defendant's track, the duty of defendant to run its trains slowly at the place, and the like, being considered, may have been sufficient to authorize the jury to find that intestate went upon the track in the exercise of due care. The special finding, or rather the failure of the jury to return special findings, is not inconsistent with the general verdict; for, had the answer been explicit and categorical, one way or the other, the verdict would have stood.

IX. Counsel for the defendant insist that "the use of defendant's track in signaling employes of the St. Louis line is not competent evidence of any right to do so." We are clearly of the opinion that the use of the track under the circumstances that at the place were other tracks used by other companies; that

6. RAILROADS: duty to employes of other companies in common switch yards.

it was near a station; that the rate of speed should be, and was, low; that the length of the train required the party at one end, who signaled to the other, to go some distance from the train, so that he could be seen, and that the signaling was for the safety of employes and the protection of property, both of defendant and the other railroads using the tracks; and other circumstances,—all require us to hold that the defendant owed to the intestate the same duty it would have owed to one of its own employes, had he gone upon its track at the place to give signals in the discharge of his duty. Public policy, humanity and a due regard to property rights of the railroads lead to this conclusion.

X. The tenth and eleventh instructions are to the effect that the rule requiring one going on a railroad track "to look and listen" does not apply to this case. We have pointed out the distinction between this case and that where mere trespassers or idlers go upon tracks. The intestate was by duty required to go upon the track. Defendant's employes were by duty required to "look out" for the intestate, and to see to it that he should not be run down and killed while serving not only his own employers, but serving the safety of defendant's employes and its property.

7. —— : —— : duty of employes to look and listen.

XI. An instruction is to the effect that a speed in violation of the city ordinance is evidence of negligence. It is said that this is erroneous, because it does not appear that the unlawful speed caused the injury. The jury could well have found that the train could have been sooner stopped if running at a lower rate of speed, and that the intestate trusted that defendant's employes would run the train at a lawful rate of speed. He was thus invited to his destruction by defendant's negligence.

8. —— : death on track: undue speed: violation of city ordinance.

XII. An instruction directed the jury that "plaintiff is entitled to such reasonable sum as damages as the

McMarshall v. The Chicago, R. I. & P. Ry. Co.

9. DAMAGES: limited by petition: instruction. death of Kern has occasioned, * * * but in no event can the sum exceed twenty-five thousand dollars, the sum claimed." Counsel for defendant think this was a direction to find in the sum of twenty-five thousand dollars. We think no jury could have been misled by failing to understand this instruction. Its meaning is apparent. It directs the jury not to find more than the sum claimed.

XIII. The verdict is sufficiently supported by the evidence. These considerations dispose of all the questions in the case, and lead us to the conclusion that the judgment of the district court ought to be

AFFIRMED.