THE METROPOLITAN STREET-RAILWAY COMPANY
v. CORA ARNOLD.

No. 13,181. (72 Pac. 857.

SYLLABUS BY THE COURT.

1. PRACTICE, SUPREME COURT—*Review of Evidence.* If a judgment entered on a general verdict finds support in the evidence upon any theory of the law embraced within the issues made by the pleadings, it will not be reversed because entirely unsupported by the testimony.

2. STREET-RAILWAY —*Negligence of Motorman— Question for*

*Jury.* In an action against a street-railway company for damages in wrongfully causing the death of one on a public street, not a trespasser, although the evidence may show that the negligence of deceased in coming upon the track in a position of danger in the first instance contributed toward the collision, yet if there is evidence tending to show that the motorman in control of the car which caused the death saw deceased in the position of danger, or by the exercise of reasonable diligence should have seen him, in time to stop the car and avoid the death, the proximate cause of the death is one of fact for the jury.

Error from Wyandotte district court; E. L. FISCHER, judge.   Opinion filed June 6, 1903.   Affirmed.

*Miller, Buchan & Morris,* for plaintiff in error.

*Warner, Dean, McLeod & Holden,* and *Angevine & Cubbison,* for defendant in error.

The opinion of the court was delivered by

POLLOCK, J.: This was an action by Cora Arnold against the Metropolitan Street-railway Company to recover damages for the wrongful death of her husband, James Arnold, alleged to have been caused by the negligence of defendant company. There was a trial of the case to the court and jury. A general finding alone was returned by the jury, which was approved by the court and judgment entered thereon. To reverse this judgment defendant brings error.

The principal ground of error urged and relied on is that the undisputed evidence found in the record shows the deceased to have been guilty of such contributory negligence as to bar a recovery for his death. Much of the material evidence is printed in the briefs and argument of counsel. From the evidence it is gathered that the deceased, about six o'clock in the evening of October 9, 1900, was traveling north on the east side of Seventh street in Kansas City, riding

a bicycle at a rapid rate of speed. For a distance of about three hundred feet before reaching the intersection of Seventh street and Central avenue in said city, Seventh street inclines about fourteen feet. It is smoothly paved with asphalt. As deceased descended this incline a car was passing on defendant's line of road from west to east on a surface track along Central avenue at the speed of about eight miles per hour. The relative positions of the deceased and the car were such that, had both proceeded at the same rate of speed they were traveling and in the same direction, the deceased would have collided with the car at the intersection of the street and avenue. The car did not stop at Seventh street. There is a conflict in the testimony as to whether the gong was sounded or other warning given of the approach of the car to Seventh street. A large two-story building, eighty by one hundred and twenty feet, stands on the corner lots southwest of the intersection of Central avenue and Seventh street, cutting off from view the approach of any one traveling north on Seventh street from one traveling eastward on Central avenue. However, the deceased could be seen from the car some thirty or forty feet before he reached it.

Central avenue and Seventh street are much used by the traveling public. East of Seventh street it is paved with blocks and quite rough. The tracks of the railway are laid above the surface of the street. When deceased reached Central avenue he turned eastward parallel with the running car. A few feet east of Seventh street, after the bicycle had passed over from the smooth asphalt pavement upon the rough block pavement, from some cause the deceased was thrown from his bicycle in front of the moving car, carried some distance, and killed. There was

evidence tending to show that he was attempting to pass over the street-car track in front of the moving car; that the bicycle wheels struck the rails of the street-car track, slipped thereon, and threw deceased in front of the car.   While such is the probable fact, the evidence is not wholly undisputed or entirely free from doubt.   Upon this state of the record, it is con-tended that the verdict is entirely without evidence in its support, and that it clearly appears that deceased was guilty of contributory negligence in bringing on the collision which terminated in his death, and that this is an end of the controversy.

As has been seen, there are no special findings of fact in this record.   We have alone the general finding and judgment thereon.   In support of the judgment rendered, it is urged that, if reasonable minds might arrive at different conclusions from all the testimony in the record as to the contributory negligence of the deceased, the proximate cause of the injury was a question of fact for the jury to determine.   It is further insisted that the action is for the wrongful death of the deceased, not for negligently causing the collision.   Therefore, if the judgment finds support in the evidence upon any theory of the law embraced within the issues made by the pleadings, it must be affirmed.   In support of this position, it is argued that, although this court may determine from an examination of the evidence that the negligence of deceased contributed to the collision between the car and deceased, yet, if the motorman in control of the car saw deceased in a position of danger, or by the exercise of reasonable diligence should have seen him in such position in time to stop the car before killing him and thus avoid the tragedy, the defendant is liable.   This exception to the general rule as to the effect of con-

tributory negligence, once established upon a right of
action, is well supported by authority.   In the case
of *Inland & Seaboard Coasting Co. v. Tolson*, 139 U. S.
551, 558, 11 Sup. Ct. 653, 35 L. Ed. 270, Mr. Justice
Gray, delivering the opinion of the court, said :

"The other instruction was in these words : 'There
is another qualification of this rule of negligence,
which it is proper I should mention.   Although the
rule is that, even if the defendant be shown to have
been guilty of negligence, the plaintiff cannot recover
if he himself be shown to have been guilty of contribu-
tory negligence which may have had something to do in
causing the accident ; yet the contributory negligence
on his part would not exonerate the defendant, and
disentitle the plaintiff from recovering, if it be shown
that the defendant might, by the exercise of reason-
able care and prudence, have avoided the consequences
of the plaintiff's negligence.'

"The qualification of the general rule, as thus
stated, is supported by decisions of high authority,
and was applicable to the case on trial.   *Radley v.
London & Northwestern Railway*, 1 App. Cas. 754 ; *Scott
v. Dublin & Wickloff Railway*, 11 Irish Com. Law, 377 ;
*Austin v. New Jersey Steamboat Co.*, 43 N. Y. 75, 82 ;
*Lucas' v. Taunton & New Bedford Railroad*, 6 Gray, 64,
72 ; *Northern Central Railway v. Price*, 29 Md. 420.
See, also, *Williamson v. Barrett*, 13 How. 101, 109."

In *Grand Trunk Railway Co. v. Ives*, 144 U. S. 408,
429, 12 Sup. Ct. 679, 36 L. Ed. 485, the same doctrine
was announced in the opinion by Mr. Justice Lamar,
as follows :

" Without going into a discussion of these definitions,
or even attempting to collate them, it will be sufficient
for present purposes to say that the generally accepted
and most reasonable rule of law applicable to actions
in which the defense is contributory negligence may
be thus stated : Although the defendant's negligence
may have been the primary cause of the injury com-
plained of, yet an action for such injury cannot be

maintained if the proximate and immediate cause of the injury can be traced to the want of ordinary care and caution in the person injured; subject to this qualification, which has grown up in recent years (having been first enunciated in *Davies v. Mann*, 10 M. & W. 546), that the contributory negligence of the party injured will not defeat the action if it be shown that the defendant might, by the exercise of reasonable care and prudence have avoided the consequences of the injured party's negligence. *Inland & Seaboard Coasting Co. v. Tolson*, 139 U. S. 551, 558, and cases cited; *Donohue v. St. Louis &c. Railroad*, 91 Mo. 357; *Vicksburg &c. Railroad v. Patton*, 31 Miss. 156; *Deans v. Wilmington &c. Railroad*, 107 N. C. 686; 2 Thompson on Negligence, 1157; Cooley on Torts (1st ed.), 675.''

The American and English Encyclopedia of Law (2d ed.), volume 7, at page 387, states the doctrine as follows:

''And upon the principle that one will be charged with notice of that which by ordinary care he might have known, it is held that if either party to an action involving the questions of negligence and contributory negligence should, by the exercise of ordinary care, have discovered the negligence of the other, after its occurrence, in time to foresee and avoid its consequences, then such party is held to have notice; and his negligence in not discovering the negligence of the other, under such circumstances, is held the sole proximate cause of a following injury.'' (Citing *O'Keefe, Admx., v. The Chicago, Rock Island & Pacific Railroad Co.*, 32 Iowa, 467; *Morris v. C. B. & Q. R. Co.*, 45 id. 29; *Purinton v. Railroad Co.*, 78 Me. 569, 7 Atl. 707; *Locke v. First Div. St. Paul & Pacific Railroad Co.*, 15 Minn. 350 [Gil. 283]; *Brown v. Lynn*, 31 Pa. St. 510, 72 Am. Dec. 768, and other cases. See, also, upon this subject, *Turnbull v. New Orleans & C. R. Co.* (C. C. A.), 120 Fed. 783; *McGuire et al. v. Railroad Co.*, 46 La. Ann. 1543, 16 South. 457; *Lampkin v. McCormick, Receiver, etc.*, 105 La. 418, 29 South. 952,

83 Am. St. Rep. 245 ; *Louisville & N. R. Co. v. Brown,* 121 Ala. 221, 25 South. 609.)

In the case at bar the deceased was not a trespasser upon the property of the defendant company. The street where the collision occurred was much used by the traveling public. In such case, the reasonableness of the exception made to the general rule of contributory negligence, and the wisdom of the rule as declared in the foregoing authorities, commends itself to our judgment. Admitting, therefore, without deciding, that the deceased was guilty of contributory negligence in bringing on the collision between himself and the car, and applying the exception to the general rule as to the effect of contributory negligence upon the right of recovery stated, it remains to be seen whether the question raised is within the issues, and whether there is sufficient evidence found in the record to support a judgment based upon such theory. Mr. Heim, a witness for plaintiff, testified as follows :

Ques. Now, just tell the jury what you saw from that on as they came together? Ans. Well, as he turned the corner the wheel struck the second rail and slipped a little ways and the man went under. He clung to the fender with both his hands.

"Q. He did what? A. He clung to the fender with both his hands, like this (showing).

"Q. Did the wheel go under the fender or on top of the fender? A. It just slid along in front of it.

"Q. The wheel was pushed along in front of the car, was it? A. Yes, sir.

"Q. And the man had hold of the fender with his hands? A. Yes, sir ; with both hands in front of him this way (showing).

"Q. And which way was his body. A. His head was to the north and his feet to the south.

"Q. And he held on to the fender. A. Yes, sir.

"Q. And how far did it push him that way? A.

Pushed him along I think about seventy-five feet, I should judge.

"Q. And he clinging to the fender? A. Yes, sir, I think it was about that far.

"Q. And then he finally went under the fenders? A. Yes, he finally went under.

"Q. You saw where the body was thrown out, did you? A. The body was thrown out right about the two front wheels of my buggy and lit right alongside of my horse. . . .

"Q. How far did that car run after dragging him about seventy-five feet? A. I did not look at that time to see the car, because I had my hands full with the horse.

"Q. But you were there looking right at it and saw the distance he was dragged? A. Yes, I seen that part of it because he was coming right toward me.

"Q. And you saw him hang on for seventy-five feet? A. He hung on until he went under.

"Q. You think that was about seventy-five feet? A. I think about seventy-five feet, I should judge."

There is other testimony in the record also tending to show that the dead body of deceased was thrown from under the car in front of the rear wheels about seventy-five feet from the point of collision. The car ran from thirty to forty-five feet after the body was thrown from under it before it was stopped. Neither the conductor nor the motorman testified in the case. There was evidence tending to show that the motorman saw, or could have seen, the deceased before he left Seventh street and at all times thereafter; that there was no obstruction to prevent such view. It was also shown that the speed of the car in question had been slackened for the purpose of turning a curve about two hundred feet west of Seventh street, from fifteen miles per hour to four miles per hour in a distance of one hundred and twenty-five feet. At the conclusion of the plaintiff's testimony a request to

amend the petition was granted, and the following amendment made :

"The defendant was guilty of further negligence in this, to wit : That the motorman in charge of said car which struck said James Arnold, deceased, saw, or by the use of reasonable diligence would have seen, said deceased, James Arnold, in a dangerous position, and said motorman, after seeing or by the use of reasonable diligence would have seen said James Arnold in said dangerous position, had sufficient time to have stopped said car and thus avoided the accident and saved the life of said Arnold."

Instruction No. 12 shows that the court presented this view of the case to the jury.

Conceding the contributory negligence of deceased in the first instance, can it be said several minds might not reasonably arrive at different conclusions from the evidence respecting the ability of the motorman to stop the car after he saw, or in the exercise of reasonable diligence should have seen, the deceased in the position of danger before he was killed ? We think from an examination of the testimony that, conceding the contributory negligence of plaintiff in the first instance, there was still sufficient evidence of defendant's negligence in causing the death of deceased to require the submission of the case to the jury, and that the verdict rendered cannot be disturbed for utter want of evidence in its support.

There are other errors assigned. We have examined them. They are not well taken, nor are they of sufficient importance to merit separate consideration.

The judgment is affirmed.

All the Justices concurring.