THE MISSOURI PACIFIC RAILWAY COMPANY V. PAULINA* BENTLEY.

No. 15,263.    (93 Pac. 150.)

SYLLABUS BY THE COURT.

1. DEMURRER — *Evidence* — *Immaterial Error.* Error in overruling a demurrer to evidence is of no avail where the defendant, instead of standing upon the demurrer, offers proof which supplies the deficiencies of plaintiff's evidence.

2. PERSONAL INJURIES—*Employee*—*Contributory Negligence*— *Question for the Jury.* A track-repairer who omits to look and listen for approaching trains while engaged in the line of his duty at work on the track is not necessarily guilty of contributory negligence as a matter of law; whether such omission constitutes negligence is ordinarily for the jury to determine, under all the circumstances.

3. ———— *"Last Clear Chance"* — *Instructions* — *Immaterial Error.* In an action for damages for the death of a railroad employee who was run over by an engine while at work on the track, where there is no evidence to show whether he looked and listened, an instruction that if the employees in charge of the engine could by the exercise of reasonable diligence have seen the deceased on the track in sufficient time to stop the engine, and thus avoid the injury, plaintiff would be entitled to recover, notwithstanding the deceased was negligent in failing to see the approach of the engine, is erroneous. In view of the other instructions as to contributory negligence, and the special findings of the jury, the giving of such an instruction in this case is held not to have been prejudicial error.

4. ———— *Contributory Negligence* — *Instructions* — *Immaterial Error.* An instruction which leaves the impression upon the jury that the defense of contributory negligence must fail

unless established by defendant's own testimony is erroneous. An instruction open to this objection held not prejudicial for reasons stated in the opinion.

Error from Sumner district court; CARROLL L. SWARTS, judge. First opinion filed December 7, 1907. Affirmed. Rehearing granted January 16, 1908. Second opinion filed June 6, 1908. Reversed.

*J. H. Richards,* and *C. E. Benton,* for plaintiff in error; *C. E. Elliott,* of counsel.

*W. T. McBride,* and *Ivan D. Rogers,* for defendant in error.

The opinion of the court was delivered by

PORTER, J.: Plaintiff recovered judgment for the death of her husband, who was an employee of the railway company. Defendant brings error.

On January 28, 1904, Robert T. Bentley, a track-repairer, was run over and killed by an engine and tender in the yards of the company at Conway Springs. At the time of the accident the railway company maintained at Conway Springs a roundhouse, situated on a switch leading to the main track, and on the main track a coal-chute and storage bins, where engines were supplied with coal. The chute was a high, covered structure, having a track extending through the center, and was equipped with pockets in which various amounts of coal were placed for the purpose of dumping the same into the tenders of engines when needed. The main track extended east and west, and the chute was on the north side of this track. The switch leading to the roundhouse joined the main track at a point 750 feet west of the place where the deceased was struck, which was on the main track, near the coal-chute. For 600 feet west of this place the track was straight, thence curving slightly to the north. It was the custom each morning, at about eight o'clock, for an engine to leave the roundhouse, enter the main track at the

switch, and go to the chute for coal. After entering the main track the whistle would be sounded, the number of blasts indicating to the men at the chute the number of tons of coal required. Thereupon one of the men in charge at the chute would quit his work and descend by a stairway from the chute and take a position in front of the pocket containing the required amount of coal.

The morning of the accident was cold, with a strong wind blowing from the northwest. The engine left the roundhouse in charge of the roundhouse foreman and a hostler's helper. After entering the main line it started east, and four blasts of the whistle were sounded as a signal for the amount of coal required. Steam was cut off and the engine was running at four to five miles an hour. The track was slightly down grade to the place where the accident occurred.

The deceased had been at work that morning with other employees at a point near where he was struck. The foreman was not with them at that time. There was some difficulty found in tightening one of the bolts, and they left this place and were all at work on the track about 250 feet west of the chute when the foreman returned. The deceased took the foreman back to the former place to show him where the trouble was, and the testimony of the foreman, who was a witness for defendant, is that after examining the bolt he directed the deceased to go to the hand-car, which stood 165 feet east, and get a track chisel. This was two minutes before the accident. After giving the order he turned and left deceased there, and never saw him again alive. The foreman was walking along the track 250 feet west of where he left the deceased when the engine passed him going for coal. The testimony showed that the track chisel had not been taken from the hand-car. The track wrench with which deceased had been at work was found lying north of the rail near the place where the bolt was out, and some spots

of blood were found on the north rail a few feet east of the same place. The deceased was not seen by any one until his body was discovered under the engine by the man who had left the coal-chute upon hearing the signal for coal and who had come down to the ground and taken a position at one of the coal-pockets.

It is contended that the evidence failed to show that deceased was at work on the track at the time he was struck; that the inference from plaintiff's testimony is that deceased was either walking upon or stepped upon the track directly in front of the approaching engine, and was therefore guilty of contributory negligence. It is argued on these grounds that the court should have sustained a demurrer to the evidence. We think there was sufficient evidence to warrant the court in submitting to the jury the question whether the deceased was at work on the track, and also whether there was contributory negligence. Defendant not only failed to stand upon the demurrer, but offered proof showing that the deceased had been at work at this place on the track within two minutes of the time he was struck, and that he was specially interested in tightening the bolt there. It was conceded in the brief that defendant's testimony "served to clear up some of the circumstances surrounding the accident." As the situation of the deceased could only be shown by circumstantial evidence, we think defendant supplied any deficiency there might have been in plaintiff's proof and it is not in a position to claim that there was error in overruling the demurrer. (*Pine v. Bank,* 63 Kan. 462, 465, 65 Pac. 960; *Woodmen Circle v. Stretton,* 68 Kan. 403, 75 Pac. 472.)

In answer to special questions the jury found that the engine was running at from four to five miles an hour; that no other signal was given except the signal for coal, which was sounded from 550 to 750 feet west of the place of the accident; that the employees in charge of the engine failed to keep a lookout, and never

saw deceased; that he had not gone after the chisel but was at work on the track at a point about forty feet west of the coal-chute, and was prevented from hearing the approach of the engine by the wind blowing about the coal-bins and chute. We are asked to say that as a matter of law the deceased was guilty of contributory negligence. This we can not do. The evidence, though circumstantial, supports the finding of the jury that he was at work on the track in the discharge of his duty. True, his position was one of danger, but whether he was negligent in failing to take such precautions as would warn him of the approach of the engine was a question for the jury to determine, under the circumstances in evidence. (*Comstock v. U. P. Rly. Co.*, 56 Kan. 228, 42 Pac. 724.) The same degree of diligence is not required of one whose duty compels his presence upon the track as is required from a traveler about to cross. (*Ominger v. N. Y. Cen. & Hudson R. R. Co.*, 11 N. Y. Supr. Ct. 159; *Goodfellow v. Boston, Hartford & Erie Railroad Company*, 106 Mass, 461; *Baltimore, etc., R. Co. v. Peterson, Adm.*, 156 Ind. 364, 59 N. E. 1044; *McMarshall v. The Chicago, R. I. & P. Ry. Co.*, 80 Iowa, 757, 45 N. W. 1065, 20 Am. St. Rep. 445; *Jordan v. Chicago, St. P., M. & O. Ry. Co.*, 58 Minn. 8, 59 N. W. 633, 49 Am. St. Rep. 486; *Noonan v. New York Cent. & H. R. R. Co.*, 69 N. Y. Supr. Ct. 618, 16 N. Y. Supp. 678; *St. Louis, I. M. & S. Ry. Co. v. Jackson* (Ark. 1906), 93 S. W. 746, 6 L. R. A., n. s., 646; *Austin v. Fitchburg Railroad*, 172 Mass. 484, 52 N. E. 527; *Northern Pacific Railroad v. Everett*, 152 U. S. 107, 14 Sup. Ct. 474, 38 L. Ed. 373; *Shoner v. The Pennsylvania Company*, 130 Ind. 170, 28 N. E. 616, 29 N. E. 775.) In volume 2 of Thompson's Commentaries on the Law of Negligence, section 1756, the author says, in reference to the duty of track-repairers, track-walkers, and similar employees:

"As a general rule, it is not contributory negligence,

15—78 KAN.

as matter of law, for a person so employed not to be on a constant lookout for approaching trains."

A fair statement of the law is that the employee must exercise such care as the danger of his surroundings would suggest to a man of ordinary prudence and caution. And it is obvious that conduct which would be negligent on the part of one who is about to cross a railroad track, though an employee at work in the yards, might not constitute negligence on the part of one whose duty requires him to remain upon the track. (*Dyerson v. Railroad Co.,* 74 Kan. 528, 87 Pac. 680, 7 L. R. A., n. s., 132.)

"Nor does the principle apply to employees whose duties require their presence upon the track, the performance of which duties necessarily precludes their paying the strictest attention to the approach of trains." (23 A. & E. Encycl. of L. 768.)

In the case of *Baltimore, etc., R. Co. v. Peterson, Adm.,* 156 Ind. 364, 374, it was said that the mere fact that a track-repairer omits to look and listen for approaching trains while engaged in the line of his duty on the track does not render him guilty of contributory negligence as a matter of law, the question whether such omission constitutes negligence being for the jury. From what has been said it is manifest that the court properly refused the request for a peremptory instruction to find for defendant.

Complaint is made of the refusal to give a number of other instructions asked, but the propositions involved therein appear to have been fully covered in the instructions given. Two of the instructions given require comment. Instruction No. 9 told the jury that if the employee in charge of the engine could, by the exercise of reasonable diligence, have seen the deceased on the track in sufficient time to stop the engine and thus avoid the injury plaintiff would be entitled to recover, notwithstanding the deceased was negligent in failing to discover the approach of

the engine. In other words, it informed the jury that plaintiff might recover notwithstanding the negligence of the deceased was of the same character as the negligence of the man in charge of the engine, or even if his negligence was of a higher degree than that of the other employee. It is said in the brief that this instruction follows the law declared in *Railway Co. v. Arnold,* 67 Kan. 260, 72 Pac. 857. But the doctrine of "the last clear chance" obviously has no application to the facts of this case. There was no evidence showing when the negligence of Bentley ceased, if he was negligent, nor was there any evidence to show that after it ceased the negligence of defendant continued. In *Dyerson v. Railroad Co.,* 74 Kan. 528, 87 Pac. 680, 7 L. R. A., n. s., 132, Mr. Justice Mason, in commenting upon *Railway Co. v. Arnold, supra,* and the doctrine of "the last clear chance" as stated in volume 20 of the American and English Encyclopædia of Law, at page 137, used the following language:

"This may be accepted as a correct statement of a principle of universal application, according with both reason and authority, provided the words 'after its occurrence' be interpreted to mean after the person concerned had ceased to be negligent. The rule that under the circumstances stated the neglect of one party to discover the omission of the other is to be held to be the sole proximate cause of a resulting injury is not an arbitrary but a reasonable one. The test is, What wrongful conduct occasioning an injury was in operation at the very moment it occurred or became inevitable? If just before that climax only one party had the power to prevent the catastrophe, and he neglected to use it, the legal responsibility is his alone. If, however, each had such power, and each neglected to use it, then their negligence was concurrent and neither can recover against the other." (Page 536.)

The opinion further quotes the following extract from volume 2 of the Supplement to the American and English Encyclopædia of Law, at page 64:

"This so-called exception to the rule of contributory

negligence (*i. e.*, the doctrine of 'the last clear chance') will not be extended to cases where the plaintiff's own negligence extended up to and actually contributed to the injury. To warrant its application there must have been some new breach of duty on the part of the defendant subsequent to the plaintiff's negligence."

The instruction was erroneous as applied to the facts of this case, but we are unable to say that it was prejudicial in view of the other instructions as to contributory negligence, and especially in view of the findings of the jury in substance to the effect that Bentley was not negligent in failing to discover the approach of the engine. The jury found that he was engaged at work on the track and did not hear the whistle or the approach of the engine on account of "being busy at work and the wind whistling through, around and under the coal-bins." If he was not negligent at all the instruction had no application, and must be held to have had no effect upon the general verdict. Instruction No. 14 was as follows:

"The burden of proof is upon the defendant to show negligence upon the part of the deceased, Robert T. Bentley, which contributed to his death."

An instruction very similar, though slightly different in language, was held to be reversible error in *Railway Co. v. Merrill,* 61 Kan. 671, 60 Pac. 819, because it left the impression upon the jury that the defense of contributory negligence must fail unless established by defendant's own testimony. In that case plaintiff was a witness and testified at great length in respect of his actions and conduct at the time he received the injury. There was much room in that case for the jury to be misled by the instruction. In *Railroad Co. v. Johnson,* 74 Kan. 83, 86 Pac. 156, we refused to extend the doctrine of *Railway Co. v. Merrill* to a case where there was no evidence offered by plaintiff which showed contributory negligence and where the jury could not have been misled.

In the present case it is difficult to see how the instruction could have prejudiced defendant.  There was no sharp conflict between the evidence of plaintiff and that of defendant on this proposition.  No person saw the deceased immediately before the accident, .and neither the evidence of plaintiff nor that offered by defendant told the jury what his conduct was.  The evidence of both practically left him at work on the track a very short space of time before the accident.  The presumption is that he failed to see or hear the approach of the engine.  Whether he was negligent in this is a matter of inference arising from all the circumstances, aided by natural presumptions.  In other words, if the instruction had been qualified as it should have been, and the jury had been told that they might find from the evidence of plaintiff alone that deceased was guilty of contributory negligence, the result must have been the same.  The fact could only be determined from all the circumstances, by inferences and presumptions; and the circumstances shown by plaintiff did not differ from those shown by defendant.  The jury were quite fully instructed as to what would constitute contributory negligence of the deceased and prevent a recovery by plaintiff, and were expressly told in instruction No. 8 to consider all the evidence in the case in determining this question.  For these reasons we are not inclined to reverse the judgment for the errors in these two instructions.  The case was otherwise fairly tried; there is evidence to support the verdict and special findings, and the judgment is affirmed.

OPINION ON REHEARING.

No. 15,263.   (96 Pac. 800.)

SYLLABUS BY THE COURT.

PERSONAL INJURIES — *Contributory Negligence — Erroneous Instruction.* The erroneous instruction respecting contributory negligence referred to in the third paragraph of the syllabus in the former opinion is held not to have been cured by other instructions given or by the findings of the jury.

The opinion of the court was delivered by

PORTER, J.: In the opinion on the former hearing it was held that an instruction as to contributory negligence was erroneous, but that the error was not prejudicial, in view of the other instructions and the findings of the jury. A rehearing having been granted, the record has again been examined, resulting in the opinion that the error in the instruction was not cured either by the other instructions or by the findings. The material part of the instruction complained of reads as follows:

"There is a qualification of this rule of negligence, which it is proper I should mention. Although the rule is that, even if the defendant be shown to have been guilty of negligence, the plaintiff can not recover if the deceased be shown to have been guilty of contributory negligence which may have had something to do in causing the accident; yet the contributory negligence on his part would not exonerate the defendant, and disentitle the plaintiff from recovering, if it be shown that the defendant, by the exercise of reasonable care and prudence, might have avoided the consequences of the said Robert T. Bentley's negligence."

As stated in the opinion, the doctrine of the "last clear chance" has no application to the facts of this case, and the instruction was clearly erroneous; its effect was to give the jury to understand that contributory negligence was no defense. The doctrine of contributory negligence is correctly stated by the trial court in the other instructions, but in the erroneous

one the court specifically charges the jury that the latter is to be regarded as a qualification of the rule stated in the former instructions, so that unless the error can be said to have been cured by the findings it must be regarded as prejudicial.

There was a failure of proof on the part of the plaintiff to show that Bentley was at work on the track just before the accident, and the evidence of the defendant can not be said to have established this fact. The foreman testified that he left Bentley on or near the track at this joint but that there was nothing which Bentley could do there without additional tools; that he ordered Bentley to go after a track chisel, and went himself after a maul. Two of the findings are as follow:

"(34) Ques. Was it necessary for said Bentley to be on defendant's railroad track at the time of the accident? Ans. Yes.

"(35) Q. If you answer the last question in the affirmative, state what made it necessary for said Bentley to be on said track at said place at the time of the accident. A. Doing his duty as a workman and employee of the company."

The defendant asked to have the jury required to return a more specific answer to the last question, which the court denied. In answer to another question they said: "We believe from the best evidence that he was at work on the track." They also found that Bentley could have seen the engine in time to avoid the accident if he had looked in the direction from which it was coming. Question No. 61 was as follows: "If said Bentley had been listening could he have heard the whistling of the engine in time to have avoided the accident?" The first answer returned was as follows: "We do not believe he heard the whistle." Being required by the court to answer it more definitely they answered, "Yes." The evidence was very meager as to what the actual conditions were at the time of and just before the accident, and might have justified a finding that deceased was negligent as much as a find-

ing that the men in charge of the engine were. Taken in their entirety the findings can not be said to negative contributory negligence.

As another trial will be necessary, it is proper to say that we think the jury should have been required to answer more definitely the question as to what made it necessary for Bentley to be on the track at the time of the accident.

The judgment is reversed and the cause remanded for another trial.