ALLEN TAYLOR, *Appellee*, v. THE ATCHISON GRAVEL, SAND AND ROCK COMPANY, *Appellant.*

No. 17,804.

### SYLLABUS BY THE COURT.

1. PERSONAL INJURIES—*Powder Explosion—Negligence—Facts Warrant a Recovery.* Evidence tending to show the following facts is held to authorize a recovery: In the operation of a quarry a small charge of powder was exploded in a drilled hole, for the purpose of enlarging it so that it would receive a larger quantity. The custom was in such circumstances for the superintendent to test the hole to be sure that no fire remained in it before it was loaded for blasting. The plaintiff was directed by the superintendent to load this hole, and was told that it was safe. He knew the custom and believed the test had been made. Relying on this belief, he attempted to load the hole. The powder exploded and he received the injuries on account of which he sued.

2. TRIAL—*Instructions—Not Prejudicial.* It is held that no prejudicial error is shown in the giving or refusal of instructions.

Appeal from Atchison district court; WILLIAM A. JACKSON, judge. Opinion filed October 11, 1913. Affirmed.

*W. W. Guthrie,* of Atchison, and *O. C. Mosman,* of Kansas City, Mo., for the appellant.

*W. P. Waggener, J. M. Challiss,* and *Walter E'. Brown,* all of Atchison, for the appellee.

The opinion of the court was delivered by

MASON, J.: While Allen Taylor, an employee of the Atchison Gravel, Sand and Rock Company, was engaged in filling a drilled hole with powder preparatory to blasting rock in a quarry, the powder exploded, injuring him severely. He sued the company and recovered a judgment, from which it appeals.

The defendant maintains that the evidence did not warrant a recovery. There was testimony tending to

show these facts: A charge at the bottom of a "king" hole had failed to explode. The defendant's superintendent ordered the plaintiff to "spring" it—that is, to explode a small charge of powder in it for the purpose of "springing" the rock so that the hole would admit a larger quantity. The plaintiff did so. The superintendent, after examining the hole, directed him to spring it again, and he obeyed. The plaintiff then informed the superintendent of what he had done, and began work elsewhere. About half or three-quarters of an hour later the superintendent told the plaintiff to go ahead and load the hole, saying that it was safe to do so. The plaintiff followed his instructions, with the result already stated. Holes of this kind had always been tested by the superintendent before being loaded, to see whether any fire was left in them or whether they were hot enough to ignite the powder. The test was made by pouring in a small quantity of powder and observing the result. At the time of his injury the plaintiff believed that the superintendent had made the test, and relied upon his assurance that it was safe to load the hole, making no test himself. The plaintiff had worked in the quarry for six or seven years. During that time he had never tested a king hole. Making such tests was a part of the business of the superintendent, who on every previous occasion had performed this duty before the plaintiff loaded a hole.

The evidence warranted a finding for the plaintiff on the ground that the defendant owed him a duty to test the hole before it was loaded; that he believed and was justified in believing that the test had been made, and that he rightfully relied upon the assurance that it was safe; that the injury was due to the negligence of the superintendent in failing to make the test, and in directing the plaintiff to load the hole without this having been done; that the plaintiff was not guilty of any negligence, and did not assume the risk of an explosion.

Complaint is made of the refusal to give a number of instructions that were requested by the defendant. We believe that so far as these instructions were necessary for the guidance of the jury, they were substantially covered in the general charge. A discussion of these in detail is not thought to be necessary. One, which we select as illustrative, was asked in these words:

"The court instructs you that if the defendant and the plaintiff were on an equal footing in opportunity for knowledge of the facts and conditions of the work of preparing the hole in question for shooting, and also in ability to interpret them, and the plaintiff knew or ought to have known and duly appreciated or ought to have appreciated the danger, if any, and continued to work, he assumed the risk and can not recover, and your verdict will be for the defendant."

Granting this to be a correct statement of the law as applied to the facts of the case, we think it would not have materially aided the jury in reaching a correct result; we are convinced, at all events, that it was not necessary to a proper understanding of the case on their part. The points at issue were few and simple. The plaintiff testified in effect that he was told the hole had been tested; that he believed this and made no test himself. The defendant maintained that he had not been told that a test had been made, or that the hole was safe; that he did not rely upon a test which he supposed the superintendent had made, but upon a test which he made himself. The superintendent testified: "I told him [the plaintiff] to go ahead and load the hole, as I was busy and did not have time to go and examine it." No special findings were made, but the jury evidently believed the plaintiff's story. They could hardly have given him a verdict without believing that he thought the hole had been tested and had sufficient reason to think so. In that case he could not be deemed to have assumed the risk.

The defendant submitted several separate instructions, each to the effect that no recovery could be had

if some specific fact were found; for instance, if the jury believed that the plaintiff knew the hole had not been inspected. The court properly told the jury what facts the plaintiff was required to prove to entitle him to a verdict, and there was no necessity for repetition, or for stating a proposition and its converse.

The court was asked to instruct that if the jury were unable to determine the cause of the explosion. they must find for the defendant. In the defendant's brief it is said: "The record shows that there are several causes which might ignite the powder, for instance the hole might be too hot on account of the spring blast, or there might be a piece of burning fuse in the hole." It was not necessary that the jury should decide between these causes. It was enough that they believed the cause was one that could have been discovered by a proper test, and this was made sufficiently clear by the instructions given.

Complaint is also made of a number of the instructions that were given. The court instructed that "the master owes the servant the duty of exercising reasonable care and diligence, and to provide the servant with a reasonably safe place in which to work." This is complained of.on the ground that it defines the master's duty as that of furnishing a safe place, instead of using diligence to do so. If this interpretation is correct, the inaccurate statement does not justify a reversal. (*Kamera v. Boiler Works,* 82 Kan. 432, 108 Pac. 806; *Reynolds v. Mining Co.,* ante, p. 208, 214, 133 Pac. 844.) A reference was made to the duty of furnishing safe tools. This was unnecessary, but not prejudicial. The instructions concerning assumption of risk are criticised. Assuming that they lacked accuracy, we think the verdict can not have been influenced thereby, in view of the character of the issue of fact. As already suggested, the jury obviously found that the plaintiff reasonably believed the hole had been tested, and in that case he did not assume the risk. The court instructed

that the burden of proving contributory negligence was on the defendant. It is argued that this instruction, like that in *Railway Co. v. Merrill,* 61 Kan. 671, 60 Pac. 819, might be understood to mean that this issue was to be determined wholly from the evidence introduced by the plaintiff. The instruction in the Merrill case was criticised by this court, but another ground existed for the reversal of the judgment. The effect there given it was due to the particular facts of that case. (*Railway Co. v. Bentley,* 78 Kan. 221, 228, 93 Pac. 150.) Here there is no reason whatever to suppose the jury were misled. An instruction is complained of on the ground that it authorized a recovery upon proof that the plaintiff did not know the hole had been inspected, whereas he should have been required to prove also that he could not have learned of it by the exercise of due diligence. We think the language of the trial court is not fairly to be given that construction. The jury were told, in effect, that if under the circumstances the custom was for the superintendent to inspect the hole, and the plaintiff was directed to load it, knowing of the custom and not knowing that it had not been followed, then he was justified in relying on the assumption that an inspection had been made. This left to the jury the question of constructive as well as actual knowledge on his part.

The judgment is affirmed.