ETHEL BECK v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.—37 S. W. (2d) 917.

Division Two, April 14, 1931.

*Luther Burns, Henry S. Conrad, L. E. Durham, Ilus M. Lee* and *Hale Houts* for appellant.

660

*Clif Langsdale* for respondent.

WHITE, P. J.—The plaintiff brought suit against the appellant and the Kansas City Terminal Railway Company for damages

on account of the death of her husband, Clifford O. Beck, killed by a train of the Chicago, Rock Island & Pacific Railway Company August 31, 1923, in Kansas City, Kansas.

Both plaintiff and defendant pleaded and quoted from a number of Kansas cases involving situations similar to the one here, so that we probably have under consideration all the rulings on the subject of the court of last resort in Kansas.

On a jury trial, September 29, 1926, in the Circuit Court of Jackson County at Kansas City, the plaintiff obtained a verdict and judgment for ten thousand dollars against the Chicago, Rock Island & Pacific Railway Company, the plaintiff having taken a nonsuit as to the Terminal Company. The Rock Island Company in due time and form appealed.

Two parallel tracks of the Terminal Company crossed a bridge over the Kaw River, the approach to which bridge began about three hundred feet east of the river, but west of the Kansas line. These two main lines are crossed at the point by other tracks, making "frogs" in the tracks. Westbound trains crossed on the north track and eastbound trains on the south track, on the ground level. Above the tracks over the bridge and approach was an upper deck. Clifford O. Beck, employed by Pratt-Thompson Company, with other workmen was engaged in stuccoing the upper deck of the approach, the stucco being blown upon the structure by sand-blowing machines. The sand and stucco which they were using fell from their work upon the track clogging the frogs, making it necessary for them each day to clean off the material which might impede the passage of trains. About 4:30 p. m., August 31, 1923, near quitting time, Beck with other workmen descended from the upper deck and began that cleaning. According to the evidence of the plaintiff, Beck was using a shovel when a train of the Rock Island Company coming from the east struck and killed him. The engine was headed east, the front being attached to a train of about fifteen cars. The engine, therefore, was running backward with the tender in advance. The train was running at from twelve to twenty miles an hour.

I. The appellant claims that the court erred in not directing a verdict for the defendant on the ground that Beck was guilty of negligence contributing to his death so as to preclude recovery under the law of Kansas.

The evidence of two or three witnesses for plaintiff showed that when Beck was hit he was in a stooping position between the rails of the westbound track with his back to the east, shoveling stucco. One witness, Elmer S. Brown, who saw Beck when he was struck, said no whistle was blown or gong sounded, nor any warning that he heard was given by anyone on the train, prior to the impact. It

was not claimed that any whistle was sounded except at the intersection of the Santa Fe tracks some 300 feet or more east of the point. Two or three other witnesses engaged in the same work testified that they heard no bell rung, though defendant's witness swore it was ringing. Another train at the same time was passing on the eastbound track coming east just a few feet from where Beck was working. There was other machinery connected with the stucco work making rumbling sounds. The noise of the other train, it was said, would have prevented the workmen from hearing the train approaching from the east. The latter was described as coming along without making any noise. The witnesses did not see it until it was passing. "It was right along by me," one explained. "It was even with me before I seen it," said another. "It just came scooting in there; it wasn't making much noise," as still another described it.

Some of the other men came near being caught. They had to run down the track before they could get off. One of them in his hurry left his tools.

The Section-hand Rule which has been recognized in this State does not prevail in Kansas. The rule announced by the Kansas cases is that where one in the discharge of his duty is at work on a railroad track, although in a position of danger, whether he is negligent in failing to take such precaution as would apprise him of the approach of a train is a question for the jury. The same degree of diligence is not required of one whose duty compels his presence upon the track as is required by a traveler crossing a railroad track. [Railway Co. v. Bentley, 78 Kan. 224, 225; Dyerson v. Railroad Co., 74 Kan. l. c. 531; Dowell v. Railway Co., 83 Kan. l. c. 572-573.] In the case last cited it was said that where the workman in such position had reason to think that those in control of an engine knew of his presence and would give a warning before moving the engine upon him, the question whether he was guilty of contributory negligence was for the jury. See also Comstock v. Union Pacific Ry. Co., 56 Kan. 228; Riley v. Railroad, 256 Mo. l. c. 603.

Appellant cites a number of cases where persons crossing railroad tracks, not at work upon them, were held under the circumstances to be guilty of contributory negligence which defeated recovery for injury incurred. The Kansas authorities cited make clear a distinction between a case where a traveler is bound to look out for trains and cases like that under consideration. The evidence shows here that these stucco workers had been engaged in work on the upper deck for a number of days, probably two or three weeks, and that it was their duty to clean the stucco off the rails each day. They knew that the railroad operatives knew it. It was a rule, as

a switchman for the defendant, put it, "a standing order," to keep the bell ringing through the yards and that such a bell could be heard above the rumble of the trains if there were not two or three trains running at the same time. While there was a slight curve to the east, the evidence is undisputed that the train was in sight of the men on the track, and necessarily those men were in sight of the men operating the train, from 400 to 1200 feet east of the point where Beck was killed and thence all the way to the place of collision. Under this evidence for plaintiff whether Beck was guilty of negligence which would bar recovery was for the jury.

II. Instruction 1, given for the plaintiff, after telling the jury that if they should find that Beck was shoveling sand and other material from the railroad track and the train approached in a manner as mentioned above, continued:

". . . if you further believe from the evidence that the agents and servants of the defendant in charge of said engine, saw, or by the exercise of ordinary care would have seen, the said Beck so on said railroad tracks, if so, or by the exercise of ordinary care would have seen the said Beck, if so, and knew, or by the exercise of ordinary care would have known that said Beck was oblivious of and not aware of the approach of said engine, if so, and knew, or by the exercise of ordinary care would have known that the said Beck was in imminent peril of being struck and injured by said engine, if so, and if you further believe that the said agents and servants so knew, and so saw, within a reasonable time prior to the said engine's striking the said Beck, to have thereafter, by the exercise of ordinary care, if so, with safety to the said agents and servants and the said engine and the train of cars being drawn by said engine, slowed up or stopped said engine or blown a whistle or sounded a gong or given a warning to said Beck of the approach of said engine, and could thereby have a-voided said collision, if so, and if you further find that the said agents and servants negligently failed to do so, and that said negligence, if any, caused said engine to strike the said Clifford O. Beck, and to cause injuries which resulted in his death, if so, then your verdict will be for the plaintiff."

Appellant claims that the instruction was erroneous in that plaintiff was not entitled to recover on the theory that Beck's peril was actually discovered in time to avoid the accident. The evidence produced by the defense was that Beck was not on the track shoveling stucco as the train approached, but was in a safe place at the side of the track and darted in front of the train when it was too late to do anything about it.

The engineer, Michael Baier, testified that from where he was seated, notwithstanding the tank which extended 25 feet in front, he could see anything on the track 150 feet ahead, or 50 feet, or 25 feet ahead of the tank. That is, he could see anyone on the track at the point where Beck was struck when he (the witness) was 50 feet from that point. As was further shown he could have seen Beck all the way for 400 feet or more down the track. After he got within fifty feet of the point Beck would be obscured by the tender.

McDonnell, a switchman, swore that he was standing on the running board in front of the tender as it approached where Beck was. He said he was looking down the track all the time and didn't see Beck until the latter ran suddenly in front of the tender. The engineer testified that the train could have been stopped within forty feet. As a matter of fact it was stopped in 100 or in 115 feet. When Beck was struck he was rolled over and over for about 40 feet and his body was pulled out from under the second car back from the engine. McDonnell said that when Beck was struck he (the witness) jumped off the running board and yelled to the engineer to stop. It appears that the engineer did not make an emergency stop, but a regular stop. The trainmen if looking—both the engineer and the switchman—could have seen Beck if he had been on the track—the engineer until he got within 50 feet and McDonnell all the time. There is abundant evidence from which the jury had a right to believe and did believe that Beck was on the track oblivious of his danger shoveling stucco during all the time the train approached. The engineer and switchman swore they looked down the track but didn't see him. The engineer, or fireman, or both said that they knew these stucco men were down there every day cleaning off the track. They had reason to expect them at that time. It is a general rule established in this State that to look is to see. That has been applied particularly to the one guilty of contributory negligence in crossing a railroad track in front of an approaching train in plain sight. There is no reason why that should not apply to operatives of a train when approaching a person in danger on the track. If the defendant's witnesses had not testified upon this point and we had only the evidence for the plaintiff to the effect that he was on the track while the train was coming several hundred feet, where he could plainly have been seen by the operatives of the train, where they had reason to expect someone to be on the track and where it was the standing order for them to keep the bell ringing as they approached, certainly it would be a question for the jury whether they saw Beck during that approach. The fact that they testified they didn't see him, testimony which the jury were not obliged to believe, does not destroy the inference they might

draw from these facts. That is to say, if a prima-facie case is made out upon a point that prima-facie case is not destroyed by evidence of the other side to the contrary.

Then comes the question whether, if they saw him, anything could have been done about it. The engineer testified the train could have been stopped within forty feet. He had reason to believe when he was within fifty feet, if he saw Beck, that the latter was oblivious of his danger. Seeing a man on the track even at a greater distance than that without apparent knowledge of the approaching train would suggest the duty to give some warning. None of those men on the track heard the bell. Not only did they say so, but their actions indicated they did not. They did not attempt to get off until the engine was almost upon them. McDonnell said the bell could be heard above the rumble of the trains *if there were not two or three trains running at the same time.* In this case another train was on the next track making more noise apparently than the train which struck Beck. Under the circumstances the men in charge of the engine, experienced as they were, should have known that. The bell, even if ringing might not be heard. Their long acquaintance with situations like this where numerous confusing noises occur, naturally suggested to them that some extraordinary warning should be sounded. No whistle was sounded after they passed the Sante Fe crossing several hundred feet further east. It is reasonable to suppose that a sharp blast of a whistle on an approaching engine sounded a hundred feet, even fifty feet, before Beck was reached would have been sufficient to warn him to get off. A warning when within twenty feet of him might have enabled him to get off the track of a train approaching at twelve or even twenty miles an hour. He could move almost that fast himself for a short distance.

It is said by appellant's counsel that several persons shouted to Beck when they saw his danger. The evidence shows that they shouted at the moment he was struck when it was too late for him to act. McDonnell testified that he thought he could kick him off the track so he would not get hurt, such was his estimate of the speed of the engine. McDonnell's explanation and that of another witness or two for the defendant was that Beck dashed on to the track diagonally in the direction of the approaching engine. That Beck was thus engaged in a mad attempt to beat the engine to the place he chose to cross, the jury did not believe. Undoubtedly from the whole of the evidence here it was for the jury to say whether the operatives of the train saw Beck in a position of peril in time to use some method of warning by which the death might have been prevented.

III. What has been said disposes of another error assigned by appellant. That is, the case was not submissible on the other alternative of the last-chance doctrine; that Beck could have been discovered in time to prevent the injury. Attention is called to the Kansas doctrine that the humanitarian rule applies where one injured is negligent in getting in a place of danger, but does not apply if that negligence continues until the moment at which the injury occurs. We have pointed out above that it was for the jury to say whether Beck was negligent in assuming the position he did. Likewise it was for the jury to say whether or not he was negligent at any time while in that position whether at the first or until too late to escape.

IV. Finally appellant makes the point that regardless of any other consideration it was error to permit recovery on the ground that the train could have been stopped or slowed down so as to avoid the injury. The engineer swore the train could have been stopped within forty feet. It was stopped in a hundred feet, or a little more than that. It certainly could have been slowed appreciably in half the distance in which it could have been stopped. Under the evidence it is possible that if the train had been a fraction of a second later in reaching the man he might have escaped, for others were escaping and yelling to him just a little too late. In a fraction of a second he could have got off the track had he received the warning. Possibly the warning of those shouting to him was adequate if it had been a fraction of a second sooner, or if the train had been a fraction of a second slower in reaching him.

Defendant offered several instructions, each one of which directs a finding for the defendant upon one of the several issues presented. What has been said disposes of such instructions.

The judgment is affirmed. All concur.