THOMAS M. PATTIE v. JOSEPH C. WILSON, *et al.*

1. ACTION ON NOTE AND MORTGAGE; *Allegation of Assignment; Issue.*
Where, in an action on a note and mortgage brought by one not the
payee and mortgagee, the petition alleges generally an assignment of
the note and mortgage to the plaintiff, but does not allege that such as-
signment was in writing, gives no copy of any instrument in writing
transferring title, and does not show any indorsement on the note or
mortgage, *held,* that a general denial not under oath puts in issue plain-
tiff's right and title, and that he is not entitled to a judgment upon the
pleadings.

2. EVIDENCE, *Rightly Rejected.* In such an action, an issue was made as
to the fact of payment between the holder of the note and mortgage and
a defendant other than the mortgagor. The mortgagor was a witness
on the trial, and testified that there had been no payment. Plaintiff
offered evidence of the mortgagor's declarations to the same effect. This
was rejected. *Held,* No material error; that there being no matter of
inducement or estoppel connected with those declarations, and only a
question as to the fact of payment, the plaintiff had no right to support
the witness's testimony by evidence that he had made the same state-
ments out of court.

3. NOTE AND MORTGAGE; *Kind of Defense.* In such action, a party was
made defendant, who, with claim of title, had been in possession for
many years, and who had made valuable and permanent improvements,
and who also held an apparently perfect chain of title from the govern-
ment down. Notwithstanding the failure of this record title, through
the invalidity of one of the conveyances in it, such party may make any
defense, including payment of the mortgage, which will prevent a de-
cree foreclosing his rights in the premises.

4. FINDING, *Sustained.* Where a note and mortgage were executed in
1858, and due in one year, and no action is commenced thereon until
1880, very slight evidence will sustain a finding of payment.

### *Error from Anderson District Court.*

ACTION brought by *Pattie* against *Wilson* and four others,
upon a note and mortgage. Judgment for the defendants, at
the September Term, 1880, of the district court. The plain-
tiff brings the case here. The opinion states the facts.

*W. A. Johnson,* and *H. L. Poplin,* for plaintiff in error.

*A. Bergen,* and *L. K. Kirk,* for defendants in error.

The opinion of the court was delivered by

BREWER, J.: This action was begun in the district court of Anderson county, on the 17th day of May, 1880. The plaintiff's petition alleges that, on or about the 15th day of July, 1858, Joseph C. Wilson executed his promissory note for the sum of $240, payable to Hamilton G. Fant, due one year after date, with 40 per cent. per annum, as interest thereon from date, and that at the same time, defendants Joseph C. Wilson and Sarah Wilson, in order to secure the payment of the note, made a mortgage to said Hamilton G. Fant, on the S.W. ¼ of sec. 31, township 20, range 20, in Anderson county, Kansas, and promised and agreed in said mortgage to pay a reasonable attorney's fee in case of a foreclosure thereof; that said mortgage is duly recorded in the Pawnee land district record office at Lawrence, Kansas; that Wilson and wife left Kansas soon after executing the note and mortgage, and have ever since been beyond the limits of the state of Kansas; that the note is due and unpaid; that in April, 1880, Hamilton G. Fant duly assigned the note and mortgage to Thomas M. Pattie, plaintiff; and that ten per cent. on the amount of principal and interest is a reasonable attorney's fee for foreclosing said mortgage; and that the defendants Reber, McCarty and W. R. King claim some interest in the mortgaged premises, but whatever interest they, or either of them, may have, is inferior, subsequent, and subject to the lien of said plaintiff; and prays for judgment, and an order of foreclosure of the mortgage, and a sale of the mortgaged premises, etc.

The defendant W. R. King in his answer admits the truth of all the allegations of plaintiff's petition, and alleges that he is the owner of the mortgaged premises, and is entitled to the surplus proceeds arising from the sale thereof, after satisfying plaintiff's claim and costs of suit.

The defendants W. S. Reber and Thomas McCarty, in their answer to the plaintiff's petition, say:

"1. That they deny each and every allegation therein set forth, except such as are thereinafter admitted.

"2. That the plaintiff is not the real party in interest, and is not the *bona fide* holder and owner of the note and mortgage set out in plaintiff's petition.

"3. That the note and mortgage were paid by Wilson Shannon in 1858, and that Shannon was the agent of Hamilton G. Fant from 1856 to 1868, and as such agent he settled the note and mortgage with Joseph C. Wilson by taking a conveyance to himself of said land, with the full knowledge and consent of H. G. Fant, which conveyance was duly made to Wilson Shannon, and the note and mortgage were thereby paid off and released; and that said note and mortgage were paid prior to the commencement of this suit.

"4. That Joseph C. Wilson and wife, on the 26th day of July, 1858, conveyed the lands described in plaintiff's petition to Wilson Shannon, who has ever since been a resident of the state of Kansas, and in September, 1866, Shannon and wife duly conveyed the land to James Reber by warranty deed; that W. S. Reber, as administrator, conveyed the land to L. M. Ernest, and L. M. Ernest and wife thereafter conveyed said land to Thomas McCarty, who now owns said land, clear from all incumbrances, without the knowledge of the claim of Fant or said plaintiff; and neither did any of the owners of said land subsequent to Joseph C. Wilson, defendant, have any knowledge or notice of any claim of H. G. Fant or the plaintiff; that the defendant McCarty is in the actual possession of the land, and that all of the said grantees have been in possession thereof and residents of the state of Kansas for twenty years last past, and no action has been brought on the note and mortgage set out in plaintiff's petition, within five years, or fifteen years after said right of action (if any such right of action there was) ever accrued.

"5. That defendant William R. King claims some interest in or to said land, under a deed from Joseph C. Wilson and wife to him, subsequent to the deed under which W. S. Reber and Thomas McCarty claim title, and asks to quiet this title as to King."

The plaintiff, in reply to the answer of W. S. Reber and Thomas McCarty, denies all new matter stated therein, and this reply is verified by the affidavit of plaintiff. William R. King replies to the answer of defendants W. S. Reber and Thomas McCarty, and denies that Joseph C. Wilson and wife ever made a deed of the land to Wilson Shannon on the 26th

day of July, 1858, or at any other time; and that Wilson
Shannon never was the owner of said land; and that William
R. King is the owner thereof in fee simple; and that the pre-
tended conveyance to the parties named in their answer is and
was void.  This reply is sworn to by the attorney for King.
Defendants W. S. Reber and Thomas McCarty file a reply to
the answer of William R. King, and deny generally all the
matters therein stated without verification.  These are sub-
stantially the issues joined between the parties.  Joseph C.
Wilson and Sarah Wilson were duly notified of the filing of
the petition and the pending of the suit, by *publication*, and
made default.  The trial resulted in a judgment in favor of
defendants, and plaintiff alleges error.  The case was tried
by a jury, which returned answers to special questions sub-
mitted, and upon those answers the judgment was rendered.

The only controversy in this case is of course between
plaintiff and the defendants Reber and McCarty.  King and
his relations to the case may be ignored.  His quitclaim deed
obtained in 1880 signifies nothing.  It might have been of
value if the judgment had been in favor of the plaintiff.  As
it is, it is nothing.  We proceed therefore to the question of
errors as between plaintiff and defendants Reber and McCarty.
And first, plaintiff insists that upon the pleadings he was en-
titled to judgment, and that the court erred in refusing his
application therefor.  Clearly the ruling of the court was
right.  Without noticing any other matter, it is sufficient to
say that the title of plaintiff to the note and mortgage was
distinctly put in issue.  The plaintiff claimed as assignee.
No written assignment was shown.  The defendants denied
generally and denied specifically plaintiff's interest and title.
It is true the answer was not verified, but only certain
allegations are admitted by a failure to answer under oath.
Among them are "allegations of the execution of written in-
struments and indorsements thereon." (Code, § 108.)  The
execution of the note and mortgage may be considered as ad-
mitted; but an assignment of the claim, not alleged to have
been in writing, is not admitted.  A parol assignment would

have sustained the allegation in the petition, and a parol assignment is not admitted by a failure to verify a denial. (*Washington v. Hobart*, 17 Kas. 275.)

Again, error is alleged in rejecting evidence offered of declarations made by the mortgagor. These declarations were not made under such circumstances as to work an estoppel, or to have been the inducement to plaintiff's purchase; but were offered simply as evidence of the fact that the note and mortgage were not paid. Without stopping to inquire whether there was any error in rejecting this testimony, it does not appear that the error, if any, worked any prejudice to the material rights of plaintiff, for the mortgagor was himself a witness, and testified that they had not been paid. He detailed the whole transaction as he understood it. Now plaintiff's case would not have been strengthened by proof that Wilson had stated out of court just what he testified to in court. If Wilson had been dead, or if his testimony was not obtainable on the trial, then the question might fairly arise, whether there was not material error in rejecting evidence of his declarations.

We pass now to the really important questions in the case, which are, whether Reber and McCarty were in a condition to raise the question of payment; and if so, whether there was evidence sufficient to sustain the jury's finding of payment. Upon these questions, these facts should be noticed: The mortgage was given July 15, 1858, and was for the purchase of a land warrant with which the land was entered. In April, 1880, nearly twenty-two years thereafter, the payee and mortgagee made an assignment to plaintiff, the note and mortgage having themselves disappeared during those years. The mortgagee was a banker in Washington, D. C. The papers were at first in the hands of a cousin living in Kansas, but the latter leaving to go into the confederate service in 1861, they were passed to Gov. Wilson Shannon, who acted for a series of years as the agent and attorney of the mortgagee, and were probably destroyed at the time of the Quantrell raid upon Lawrence. A deed in proper form, of date July 26,

1858, from the mortgagor and wife to Wilson Shannon, was in evidence, and defendants' record title was founded upon this deed and a conveyance from Shannon. In reference to the deed, these seem to have been the facts: There was some talk of occupying this land for a town site, and immediately after the land was entered, one Dr. Bowen made an arrangement for its purchase. He paid $600 down, and was to have title when he paid off the note and mortgage. A deed was prepared and executed by the mortgagor, complete in every respect except the name of the grantee. This was to be filled in with the name of Dr. Bowen, or that of the town company, as the doctor should determine, and should be so filled in and delivered when the doctor paid off the note and mortgage. The land was not taken for a town site, the doctor did not pay off the mortgage, and Gov. Shannon, coming down to foreclose the note and mortgage, in some way got possession of the deed, had his own name filled in as grantee, and instead of foreclosure and sale, thus attempted to collect the debt. The defendants had been in possession for years, and had made valuable improvements.

Now the argument of plaintiff is, that the mortgagor having been a non-resident of the state since 1860, the note and mortgage were not barred by the statute of limitations, and that as the deed to Shannon was void and passed no title, defendants were not in any position to question the present validity of the note and mortgage, or a decree in favor of plaintiff. But this is as broad as it is long. If they have no rights in this land, they should not have been made parties. So long as plaintiff has made them parties, if they have any rights in the land they may defend them against every opponent. Mere possession becomes the basis of title, and a party having that possession may defend it as against anyone who seeks to establish a right which if enforced will destroy that possession. If these defendants had not been made parties, plaintiff could have obtained a decree of foreclosure and sale against the mortgagor, and then, receiving a deed in such foreclosure proceed-

ings, could have litigated in an action of ejectment their rights in the premises. By making them parties in this action he simply anticipates, but he deprives them of no rights. Every defense which they could interpose if sued in ejectment they can interpose now. In short, no mere time or form destroys rights. Plaintiff, by making these parties defendants, invites them to defend, and in that defense they may avail themselves of every objection to plaintiff's claim. So that though their record title may fail by reason of the invalidity of the deed to Shannon, yet they may defend because of the rights acquired by long-continued possession. Mere possession, if not title, is the *basis* of title. Defendants held possession, with claim of title. Such possession will with years perfect title. The holder of it may make full defense. (*Bradley v. Parkhurst*, 20 Kas. 462.)

Was there evidence to sustain the finding of payment? In reference to this it may be said that very slight evidence will sustain such a finding as to a debt twenty-two years old. The very inaction of the holder of the claim during these years is strong evidence of payment. No individual, much less a banker, permits a debt, secured by mortgage, to go a score of years, undischarged and uncollected. And there was evidence of payment, beyond the mere lapse of time. One witness testified that on looking over the list of Kansas notes and mortgages held by Fant and kept by the latter, he saw this marked as settled, and that Fant told him it had been settled by Gov. Shannon. The latter was the agent and attorney of Fant during those years. He received an apparent title at least, and then sold the land and executed a conveyance. His action remained unchallenged for nearly a score of years. Neither mortgagor nor mortgagee questioned. The principal did not call the agent to account. Not until Gov. Shannon died is any attack made upon the transaction. Then the mortgagor is visited in Illinois, and a quitclaim deed obtained, for which three dollars are paid. An assignment is obtained from the mortgagee, and foreclosure is commenced. Now under these

circumstances, it cannot be said that there was nothing upon which to rest the finding of payment. We think there was abundance.

There being no other questions in the case, the judgment will be affirmed.

All the Justices concurring.