## MARY G. GODDARD V. DANIEL DONAHA.

1. EVIDENCE — *Demurrer, Overruled — Immaterial Error.* Where a demurrer to the plaintiff's evidence is overruled, when, owing to the omission of some testimony, it should have been sustained, and afterward the defendant introduced evidence which supplied the omission, and upon all the evidence introduced at the trial the judgment was properly given for the plaintiff, the error became immaterial.

2. QUITCLAIM DEED — *Holder to Take Notice of Superior Titles.* A person claiming to own land under a quitclaim deed executed to him, is bound to take notice of all superior titles to the land which might have been discovered by proper inquiry.

3. PAROL AGREEMENT *to Convey Land, When Inoperative.* A parol agreement to convey land and full payment of the purchase-price, will not alone operate to pass the title thereto where no possession of the land is taken under the agreement, and no memorandum thereof is in writing.

*Error from Marshall District Court.*

THE case is stated in the opinion.

*Calderhead & Patterson,* for plaintiff in error.

*J. A. Broughten,* for defendant in error.

Opinion by HOLT, C.: William Gilruth, a wealthy farmer, living in Scioto county, Ohio, placed with Jeff. Thompson, at St. Joseph, Missouri, in 1860, five land warrants for him to locate on government lands in Kansas. Shortly after, Thompson went south into the rebel army, and never reported concerning the warrants. Gilruth heard nothing of them, nor of any land upon which they might have been located, until

sometime in 1870, or 1871, when he saw in a Marshall county newspaper that five quarter-sections of land, assessed in his name, were advertised in the delinquent tax-lists of that county; he then told his son Archibald that if he would look up all the lands and pay all the taxes and charges that might have been assessed against them, he might have them. Archibald borrowed $500 from his brother Thomas, came to Kansas and redeemed part of the land, including the quarter-section in controversy. A few years afterward, he went as missionary to India, where he now is. Before he went he told his sister Mary, now Mrs. Goodard, that if she would pay the debt due Thomas, she might have his interest in the lands; she has since paid that debt in full. No deeds or any memoranda were ever executed, either by Gilruth the father or Archibald the brother, to Mrs. Goddard. In 1879 the old gentleman died intestate. He had requested before his death that his property should be divided, as nearly as possible, into nine equal shares—one share to each of his children surviving him. His property, both real and personal, except the lands in Kansas and a tract which came to him by his wife, who died long before, was amicably divided and distributed. In 1885 five of his heirs united in a warranty deed of the Kansas lands, without consideration, to Mrs. Goddard, and one Col. Gilruth executed a quitclaim deed for the consideration of $300 expressed in the deed, although as a matter of fact no consideration passed. Mrs. Kelly, an older married sister, refused to convey her interest therein unless she should be paid for it. Archibald Gilruth had paid all taxes and charges upon the land up to 1875; since then up to the commencement of this action the taxes were paid by Mrs. Goddard; the land was assessed up to 1886 in the name of William Gilruth.

January 4, 1886, Mrs. Kelly and her husband for a valuable consideration conveyed by quitclaim deed the undivided one-ninth interest to the southeast quarter of section 35, town 5, range 9, Marshall county. The above-mentioned deeds to Mary Goddard were on record at this time in the office of the

register of deeds of Marshall county. In June, 1886, Daniel Donaha commenced this action for partition of this land, claiming that he owned an undivided one-ninth interest therein. At the trial, at the August term, 1887, of the Marshall district court, plaintiff introduced his quitclaim deed from Mrs. Kelly and her husband, and rested. The pleadings showed that Mrs. Kelly was one of the heirs of William Gilruth. The defendant demurred to the evidence; the demurrer was overruled, and the defendant then introduced his testimony.

We think the court erred in overruling the demurrer to the evidence, but as the defendant offered testimony subsequently, showing the entire interest both of Mrs. Kelly and Mrs. Goddard, the error was immaterial. A quitclaim deed of itself, given directly to the party claiming under it, is enough to put him on inquiry, and as against a paramount title held by another, which might have been ascertained by reasonable diligence, he will be held to have purchased with notice. (*Johnson v. Williams,* 37 Kas. 139.)

There was quite a volume of evidence introduced at the trial, and considerable stress laid upon its sufficiency in the briefs, in reference to the inquiries or lack of inquiries by Donaha about the title and ownership of this land. The evidence on that subject is entirely immaterial under the other facts proven in the case, for, under all the evidence adduced, it would make no difference what inquiry he made. He paid Mrs. Kelly full value for the land, and obtained by the quitclaim deed all the estate she and her husband had in it—nothing less and nothing more. (*Belz v. Bird,* 31 Kas. 139; *Trustees v. Hewitt,* 37 id. 107.)

The vital question remaining in this case, therefore, is what interest, if any, did Mrs. Kelly have in this land? It is admitted she was the heir of William Gilruth, and unless the land was transferred by him to Archibald, and by Archibald to his sister Mary, she would have had the undivided one-ninth interest which she attempted to convey to Donaha. William Gilruth never executed any conveyance to either his

son Archibald nor Mary G. Goddard, nor did Archibald execute any deed or any other written instrument to her. Neither Archibald nor Mary ever took possession of the land until after the deed was made by Mrs. Kelly to Donaha, when Mrs. Goddard testified she took possession. There was an agreement with the old man that if Archibald should pay all the taxes and charges against the land, he might have it, but this contract, not being in writing, was prohibited by the statute of frauds. Mrs. Goddard never had any written proof of her title until the deeds were made to her by the other heirs. To be sure, the full purchase-price had been paid, yet without taking possession of the land and making some valuable improvements upon it, or by doing some act which would have placed the purchaser in a position where she could not be restored to her original condition by the repayment of the money with interest, she could not have enforced this contract in an action for specific performance.

These agreements, made between William Gilruth and his son Archibald, and Archibald and Mary, were not conveyances in themselves — they were simply agreements to convey. The defendant at most had only a lien upon Donaha's undivided one-ninth part of the land for the payment of the taxes and charges by herself and her brother Archibald, which the court recognized in its judgment.

In conclusion, we repeat that Mrs. Kelly was one of the heirs to this land at the time of the old gentleman's death, and so obtained by descent an undivided one-ninth interest therein, subject only to a lien for the taxes paid thereon, and that Donaha obtained such interest by the quitclaim deed executed to him.

We recommend that the judgment be affirmed.

By the Court: It is so ordered.

All the Justices concurring.