## J. K. P. PINE v. THE WESTERN NATIONAL BANK.

### No. 12,528.   (65 Pac. 690.)

#### SYLLABUS BY THE COURT.

1. EVIDENCE—*Demurrer—Review.* Error assigned for the overruling of a demurrer to the evidence will not be considered where the demurring party supplies the necessary facts in the evidence admitted on his own behalf.

2. ——— *Stock-books of Corporation.* Entries on the stock-books of a corporation are not written instruments, within the meaning of section 4542 of the General Statutes of 1901.

3. CORPORATIONS—*Transfer of Stock.* The transfer of certificates of stock in a corporation, to become effectual between the assignor and creditors of the corporation, must be recorded on the books of the company. The case of *Plumb v. Bank of Enterprise,* 48 Kan. 484, 29 Pac. 699, followed.

4. ——— *Interest on Stockholder's Liability.* Interest will be allowed on the amount of a stockholder's liability from the date of the commencement of the action.

Error from Greenwood district court; C. W. SHINN, judge. Opinion filed July 6, 1901. Division two. Modified and affirmed.

STATEMENT.

THIS was an action brought by the Western National Bank against J. K. P. Pine to recover from the latter the sum of $2000, with interest, on account of his statutory liability as a stockholder in the Western Farm Mortgage Trust Company, an insolvent corporation. Judgment was rendered in the district court of Douglas county on July 2, 1892, in favor of the bank and against the trust company for a sum exceeding $20,-000.   Executions were duly issued and returned unsatisfied.

It is alleged in the petition in the present case that plaintiff in error Pine is a stockholder in said insolvent corporation to the amount of $2000, evidenced by two certificates for ten shares each, issued on the 1st day of December, 1888.   Defendant in error had judgment against Pine in the court below for the sum of $2000, the face value of the stock.   The material findings of the court may be summarized as follows :

" The Western Farm Mortgage Trust Company was organized under the laws of the state of Kansas in November, 1887, with its principal place of business at Lawrence, in this state, with a capital stock of $500,000, which was afterward increased.   About October, 1891, there was organized, by practically the same persons who managed and controlled the Kansas company, a corporation under the laws of the state of Colorado, named the Western Farm Mortgage Trust Company, of Denver, Colo., with a nominal capital stock of $3,000,000.   This new organization offered its stock to the stockholders of the Kansas company in exchange for their respective holdings of stock in the latter, agreeing to give to each of said stockholders an additional amount of stock in the Colorado company equal to ten per cent. more than they held in the Kansas company.   On the 1st day of

November, .1891, the defendant Pine assigned his two certificates of stock to one John S. Wilber, in payment for extra services rendered by Wilber as an employee of the assignor. The certificates were delivered by Pine to Wilber, who mailed them to Denver, where they were received by the officers of the Colorado company, who were also officers of the Kansas corporation. Before the officers of the Kansas and Colorado companies at Denver had received said certificates from Wilber, they issued two certificates of stock, to the amount of $2200, in the stock of the Colorado company, and sent them to Pine in New York. At that time the trust company had no knowledge of the assignment of the stock to Wilber. Defendant below received the new certificates from the Colorado company on November 17, 1891, and returned them to its vice-president, advising him that he had sold his stock to Wilber and requesting him to have a new certificate for said stock in the Colorado company issued and mailed to John S. Wilber, in Lansingburg, N. Y. When Pine returned the certificates for.$2200 of the stock of the Colorado company, he neglected to transfer and assign them to Wilber, and upon their receipt a second time he duly assigned the same to him and sent them back to the vice-president of the Colorado company, again requesting that a new certificate be issued to Wilber. The certificate of stock assigned by Pine was canceled on the books of the Colorado company, and a new certificate issued to John S. Wilber for $2200.

"Each of the certificates in the Kansas company contained the following provision : 'Transferable only on the books of the said company in person or by attorney upon surrender of this certificate.' Defendant below never at any time executed any power of attorney to any one authorizing the transfer of the stock in the Kansas company to John S. Wilber, and he knew that Wilber did not obtain any stock of the Kansas company in exchange for the two certificates in that company which were indorsed to him, but that, instead of becoming a stockholder in the Kansas

company, Wilber accepted stock in the Colorado corporation, as shown by the certificate No. 3041 for $2200.   Pine never at any time, prior to the bringing of this action, requested any officer of the Kansas company to cause an entry to be made on the books of the latter indicating that stock originally owned by him had been transferred to John S. Wilber or any other person.   Prior to the bringing of this action no record was ever made in the transfer record or on the stub-book of the Kansas company indicating in any way that the stock held by Pine had been transferred to Wilber or any other person ; nor is there any record on the books of the Kansas company indicating that Pine had indorsed his stock to Wilber.''

*Fuller & Jackson,* for plaintiff in error.

*Reed & Reed,* and *Hodgson & Hodgson,* for defendant in error.

The opinion of the court was delivered by

SMITH, J. : The first assignment of error relates to the admission of the stub-books showing the shares of stock issued to the defendant below.   It is claimed that the entries on these books were written by another person than the witness who produced them, and hence copies were not properly admitted in evidence.   This objection is not available to the plaintiff in error, for the reason that after his demurrer to the evidence was overruled he gave testimony in his own behalf admitting that the stock had been issued to him as alleged in plaintiff's petition.   If he had stood on his demurrer, we might have considered the question presented. (*Simpson v. Kimberlin,* 12 Kan. 579 ; *Drumm v. Cessnum,* 61 id. 467, 59 Pac. 1078.)

1. Demurrer to evidence—review.

Counsel further contend that under the pleadings the assignment of the stock by Pine to another before

the 1st day of February, 1892, is admitted.    This
claim is without substance.    Pine's answer avers that
he duly sold, assigned and transferred
all his right, title and interest in all of
said shares of stock in the Western Farm Mortgage
Trust Company before the 1st day of February, 1892,
and that the same was done in the regular course of
business, in good faith, for a valuable consideration.
It is not alleged that said assignment or transfer was
in writing, and hence the allegations concerning it
were disputed by the unverified reply. (*Pattie v. Wilson*, 25 Kan. 326.)    The defendant further alleged in
his answer:

2. Stock-books as evidence.

"That at the time of the transfer of said shares so
held by defendant a due and regular transfer was
made of said shares upon the books of said Western
Farm Mortgage Trust Company, as is provided and required by law."

In reply to this the plaintiff below averred that it had
no knowledge of any pretended transfer of said stock,
but if the same was made it was without consideration, to an insolvent person, for the express purpose
of avoiding the payment of the claim of the plaintiff
and other creditors.    We do not think the averment
that a due and regular transfer of said shares so made
on the books of the mortgage trust company amounts
to an allegation of the execution of a written instrument.    An entry made on the books of a corporation
is not, in our judgment, to be considered as the execution of a written instrument, within the meaning of
section 108 of chapter 95 of the General Statutes of
1897 (Gen. Stat. 1901, § 4542).    If it were so held,
then all entries in the books of a bank or other corporation or of a merchant set out in a pleading must
be taken as true, unless denied under oath.

Counsel for plaintiff in error make the claim that, under section 1302 of the General Statutes of 1901, no action can be brought to charge a stock-holder except in the court where the judgment against the corporation was rendered.   This view is erroneous.   Such a construc-tion of the statute would defeat every action brought in a foreign state to charge a stockholder resident there after a judgment had been taken against the insolvent corporation in Kansas.   Further, if the stockholder were a non-resident of the county in which the judgment was rendered against the corporation, and had no property within the jurisdiction of the court, the remedy by action would be unavailable to the judgment creditor.   (*Howell v. Manglesdorf*, 33 Kan. 194, 5 Pac. 759 ; *Fidelity, Insurance, Trust & S. D. Co. v. Mechanics' Sav. Bank*, 38 C. C. A. 193, 97 Fed. 297.)

*3. Jurisdiction in actions against stockholders.*

It is insisted that, because the plaintiff in error as-signed his certificates of stock in the Kansas corpora-tion to Wilber on a consideration found to be valuable by the trial court, and notified the offi-cers of the corporation of the fact, from that time Pine ceased to be liable to creditors, al-though the transfer was not in fact entered on the books of the company.   It will be noted that before the officers of the trust company received any notice of the assignment of the stock they had issued new certificates in the Colorado company to Pine in lieu of the stock held by him in the Kansas corporation.   He returned these certificates, with the request that the Colorado company issue to Wilber new certificates of stock in that company instead of to himself.   There seems to have been a lack of effectual effort on the part of Pine to secure the transfer of his stock on the

*4. Transfer of shares of stock.*

books of the Kansas company. When new certifi-
cates were issued to Wilber in the Colorado company
the plaintiff in error appeared to be satisfied that his
connection with the Kansas concern had terminated.
We think, from the evidence in the case and the find-
ings, that, except as between himself and Wilber, the
plaintiff in error did not change his status as a stock-
holder in the Kansas company. In *Plumb v. Bank of
Enterprise*, 48 Kan. 484, 486, 29 Pac. 699, it was said:

"The registration of stock required by statute is in
part for the benefit of the public, and to provide cred-
itors with a record of those who are individually liable
in case the corporation becomes unable to meet its ob-
ligations. Under our constitution and statutes, the
individual liability stands as a sort of surety for the
corporate liability, and creditors of the corporation
are supposed to contract with reference to the indi-
vidual responsibility of the stockholders. The general
rule is, that the books of the corporation furnish evi-
dence as to what persons are entitled to the rights and
privileges of stockholders, and as to whom creditors
may look for payment in the event of the insolvency
of the corporation. Creditors of a corporation are
presumed to have relied upon the books; and, where
a stockholder sells his stock, but permits his name to
stand upon the books of the corporation as one of its
stockholders, he is in no condition to claim exemption
from individual liability. If he has attempted in good
faith to have the transfer recorded, and, having done
all in his power to that end, fails, other conditions
would arise; but where he negligently permits the
stock to stand upon the books in his own name, and
fails to do that which is necessary to transfer the legal
title of the stock in accordance with the statute, he is
not released from individual liability by the mere as-
signment and delivery of the certificates." (Citing
cases.) (See, also, 3 Thomp. § 3284; *Ottumwa Screen
Co. v. Stodghill*, 103 Iowa, 437, 72 N. W. 669.)

The court below, upon application of the defendant

in error, refused to allow interest on the amount of the stockholder's liability, and the bank has filed a cross-petition in error by which it seeks to reverse such ruling. While the courts are not unanimous in their views on this question, yet we think the weight of authority sustains the right of the judgment creditor to receive interest on the amount due from the stockholder from the date of the commencement of the action in which he is sought to be charged. In this state the liability of the stockholder is held to be contractual. ( *Woodworth v. Bowles*, 61 Kan. 569, 60 Pac. 331.) A stockholder may discharge himself from liability by paying to the creditor an amount equal to the face value of the shares before any action is brought. (*Munson v. Warren*, ante, p. 162, 65 Pac. 222.) Here the stockholder withheld from the bank, from the time of the commencement of the action, the sum of $2000 legally due it. In *Burr v. Wilcox*, 22 N. Y. 551, 557, the court said :

5. Interest on stockholder's liability.

"The creditor has a right to select among the stockholders the individual against whom he will proceed ; and until he has made his selection, no particular stockholder is liable, and hence no interest can be allowed for any previous time. But from the time of the commencement of a suit for a debt exceeding the amount of the principal of the defendant's stock, I see no reason why interest should not be allowed. It has then become a fixed liability for a specific amount, and ought, upon general principles, to carry interest."

The same conclusion was reached in an able opinion by Judge Taft, in the superior court of Cincinnati. (*Wehrman v. Reakirt et al.*, 1 C. S. C. R. 230. See, also, *Mason v. Alexander*, 44 Ohio St. 318, 7 N. E. 435.) Mr. Thompson, in his work on Corporations, states the rule to be that if the statute makes the

Pine v. Bank.

stockholder liable to his creditors, each for his proportion of the corporate debts, then no interest will be allowed, because no stockholder can tell how much he has to pay, or to whom, until it is ascertained by a suit in equity.   The author further says :

"But if the creditor is kept out of his money through the refusal of the stockholder to pay when demand is made upon him, he ought to receive interest during the time he has been thus wrongfully delayed, although such interest, together with the principal, make a sum in excess of the amount for which the stockholder otherwise would have been liable.   Upon this principle, it has been ruled that interest will run against the stockholder from the date of the commencement of the suit against him, although it results in charging him with a sum in excess of that for which he was individually liable." (Vol. 3, § 3133.)

The present action was commenced on January 27, 1894.   We think the plaintiff below was entitled to interest from that time at the legal rate.

The judgment of the court below will be modified, with directions to increase the amount of the judgment by adding thereto legal interest from January 27, 1894, to the time when the judgment was rendered.

CUNNINGHAM, ELLIS, JJ., concurring.