RAMSDEN v. KEENE FIVE CENTS SAVINGS BANK.

SAME v. CHESHIRE PROVIDENT INST.

(Circuit Court of Appeals, Eighth Circuit.   July 17, 1912.)

Nos. 3,643, 3,644.

**1.** Mortgages (§ 559*)—Foreclosure Sale—Purchase of Property by Mortgagee—Enforcement of Deficiency Judgment.

Where a mortgagee buys in the mortgaged property at the foreclosure sale, fairly conducted, for less than the mortgage debt, and takes judgment for the deficiency, the mortgagor is not entitled to have a profit subsequently made by the mortgagee on the purchase credited on the deficiency judgment.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 1592, 1600–1608; Dec. Dig. § 559.*]

**2.** Corporations (§ 225*)—Action to Enforce Double Liability of Stockholder—Interest.

In an action against a stockholder in an insolvent Kansas corporation to enforce his statutory double liability, interest is recoverable only from the commencement of the action.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 864, 865, 867–869, 871–873; Dec. Dig. § 225.*]

**3.** Corporations (§ 249*)—Action to Enforce Double Liability of Stockholder—Equitable Defenses—Limitation.

In an action to enforce the constitutional and statutory double liability of a stockholder in an insolvent Kansas corporation, an equitable defense existing in favor of the stockholder, in the nature of a set-off, is not affected by the statute of limitations.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1002–1010, 1012, 2273; Dec. Dig. § 249.*]

Appeal from the Circuit Court of the United States for the District of Kansas.

Suit in equity by the Keene Five Cents Savings Bank and by the Cheshire Provident Institution against Frederick Herbert Ramsden. Decrees for complainants, and defendant appeals. Affirmed.

John A. Eaton (J. T. Lafferty, on the brief), for appellant.

Frank Hagerman, for appellees.

Before SANBORN, Circuit Judge, and WILLARD, District Judge.

WILLARD, District Judge. After the decision of this court in the three cases, Anglo-American Land, Mortgage & Agency Co. v. Lombard Investment Company, Ramsden v. Cheshire Provident Institution, and Ramsden v. Keene Five Cents Savings Bank, all reported in 132 Fed. 721, 68 C. C. A. 89, under the name of Anglo-American Land, M. & A. Co. v. Lombard, the three cases were remanded to the Circuit Court for the District of Kansas. Thereupon the Keene Five Cents Savings Bank filed a bill in equity to restrain Ramsden from prosecuting his action at law, and to procure a set-off of certain claims which it held against the Lombard Investment Company, which it had presented as defenses in the action

at law, and which this court held could only be made available in equity. The Cheshire Provident Institution also filed a bill for the same purpose. Answers and replications were filed, testimony was taken, and a decree was entered in each case in favor of the complainant, allowing the set-offs. The defendant, Ramsden, has appealed in both cases.

The facts, so far as they appear in 132 Fed. 721, 68 C. C. A. 89, need not be restated. In addition to those facts, it appears that the Keene Bank held the notes and mortgages of certain individuals, the payment of which had been guaranteed by the Lombard Investment Company. It foreclosed these mortgages, bid in the property secured thereby at foreclosure sale for a sum less than the amount due, and now seeks to offset against its liability as a stockholder the deficiency arising upon such sale; that is to say, the difference between the amount then due on the mortgages and the amount of its bid. This bank also holds debenture bonds issued by the Lombard Investment Company, containing its unconditional promise to pay them, and it seeks to offset these also as to the balance now due thereon. The Cheshire Bank is similarly situated, holding both guaranteed notes and mortgages and debentures.

The right of a stockholder in a Kansas corporation, when sued on his liability as such stockholder, to set up as an equitable defense claims which he has against the corporation, is settled by the decisions of the Supreme Court of Kansas. Those decisions are binding upon this court. Pierce v. Security Company, 60 Kan. 164, 55 Pac. 853. This court said in the case in 132 Fed. 721, at page 731, 68 C. C. A. 89, at page 99:

"Under this legislation, it is the practice in the courts of Kansas to permit stockholders in actions like this to avail themselves of any equitable set-off which they may have, in like manner as they may interpose a defense available at common law."

[1] The precise claim of Ramsden with reference to the mortgages and notes is this: Since the foreclosure sales the banks have sold the property bid in by them for sums much larger than the amounts of the respective bids, the deficiencies existing at the time of the sales have been paid, and therefore there is nothing now due the banks from the Lombard Investment Company. The claim will more clearly appear if we refer to a specific case as an illustration, and for that purpose we take what is known in the record as the Scanlon mortgages. This presents the case as favorably for the appellant as any. On March 7, 1889, William J. Scanlon executed and delivered to the Lombard Investment Company nine mortgages for an aggregate amount of $64,200. Each one of these mortgages was a lien upon a separate and specific tract of land in Dodge county, Wis., and the nine tracts thus mortgaged constitute one parcel of land called the "Horicon Marsh." It was then used as a shooting park, but since, by draining, has become valuable as agricultural land. Three of these mortgages designated as "o-32642," "o-32643," and "o-32644," with the notes secured thereby were, prior to any foreclosure proceedings sold by the Lombard Investment Com-

pany to the Keene Bank, and the payment of the notes secured thereby guaranteed by the Investment Company. Two of these mortgages were for $5,000 each and the other was for $4,200. Of the other six mortgages five of them were held by the trustee as security for certain debentures issued by the Lombard Investment Company, and the other one, as it seems, though this from the record is not clear, was owned by one Knowles. Default was made in the payment of the interest which became due October 1, 1890. A suit was commenced by Knowles in the Circuit Court of the United States for one of the districts in Wisconsin to foreclose his mortgage. To this suit the owners of the other mortgages were made defendants, among them the Keene Bank. These owners, including the Keene Bank, filed cross-complaints, asking for the foreclosure of their mortgages. A final decree was entered upon the cross-complaint of the Keene Bank on January 10, 1893, adjudging that the amount then due to the Keene Bank was $16,979.12. Such proceedings were afterwards had that the land covered by the Keene mortgages was sold by the United States marshal on April 12, 1894, which sale was confirmed on June 23, 1894. At the sale the Keene Bank bid in the property for $4,590. The deficiency resulting from the sale was $12,387.12. The other tracts covered by the other mortgages were bid in by Hagerman as trustee for the debenture holders, at sums the amount of which does not appear in the record. Afterwards, in June, 1895, the whole tract was sold for $85,000. Of this sum the Keene Bank received $16,-859, which was less than the amount due on its notes and mortgages. The sum which the Keene Bank claims the right to off set is the aforesaid deficiency of $12,387.12. Ramsden claims that it has no right to off set that amount, because, though the resale did not pay the debt in full, yet it practically discharged it.

His counsel says:

"The evidence covered by the above references shows conclusively that the whole plan in dealing with securities was not to rely upon a judicial sale, but to follow the property after the debenture sale, and thereupon realize additional sums to be credited upon the indebtedness. In cases of foreclosure upon all of the loans upon which said appellees'.set-offs or defenses are sought to be predicated, this was the course pursued. * * * The whole scheme was for the purpose of enabling the Lombard Company to pay its obligations by a resort to the securities after formal judicial sales. The facts constitute a trust in favor of the Lombard Company. * * * In the cases of the guaranteed loans, sales of the property pledged or mortgaged to secure the loans were made through and by the Lombard Company or its receivers, and in each case for the benefit of the appellees, who became the purchasers of the property for the purpose of holding it for resale and making a resale to fully, or, so far as possible, pay the obligations resting upon the Lombard Company as guarantor. The direct object, as shown by the undisputed evidence, was to insure and procure the payment of the balance of the indebtedness remaining after the foreclosure and sale of the property pledged or mortgaged."

What evidence is there to support the claim that when the bid was made in April, 1894, there was an agreement between the Lombard Investment Company or its receiver and the Keene Bank that the Keene Bank should buy the property, should hold it, and resell it for the benefit of the Lombard Investment Company after the

Keene Bank had been paid in full? It is true that the evidence shows an agreement between the Keene Bank as the owner of three tracts of the land and the owners of the other six tracts, that they would handle the separate tracts as one parcel and would sell them together; but there is no evidence that at or prior to the time of the bid there was any agreement of any kind, express or implied, between the Lombard Investment Company or its receiver and the Keene Bank that the Lombard Investment Company should have any interest in the land after the sale. The fact that J. L. Lombard, a former officer of the Lombard Investment Company, was the agent of the Keene Bank to conduct the foreclosure, and was present at the sale, has no tendency to prove any such agreement. The evidence shows that he was employed by the Keene Bank and reported directly to it. The further fact that prior to the receivership the Lombard Investment Company was in the habit of foreclosing defaulted mortgages for its customers to whom it had sold them has no tendency to prove that, after the receivership and at the time this bid was made, any agreement such as the appellant mentioned was entered into. There was never any fiduciary relation existing between the Keene Bank and the Lombard Company. The sale was a public, judicial one. There is no evidence to show that it was not fairly conducted. Any one, including the Lombard Investment Company or the receiver, was at liberty to bid at the sale to protect his interest if he was so advised. The lands covered by the mortgages involved in this suit were situated in different states. It is probably true that in most of those states the law gave the mortgagor a period after the sale in which to redeem. In making bids the Keene Bank was bound to take this into consideration, and knew that, if a sum much less than the value of the property was bid, a redemption could be made, and the property entirely lost to it. In fact, there is nothing in the case to show that the sum which it bid at the sale was not what the land was then worth, except the fact that a year or more afterwards it was sold for a sum considerably larger. But the evidence shows that during that time the owners spent money, the exact amount of which does not appear, in draining and improving the property, and that the Keene Bank bore its proportionate share of this expense.

It would introduce a new doctrine in the law to hold that, under circumstances such as appear in this case, a mortgagor could resist the collection of a deficiency judgment years after it was entered, on the ground that the land had increased in value since the bid. This, however, seems to be the claim of the appellant, for it introduced evidence at the trial in cases where there had been no resale, to prove what the land is now worth.

The facts relating to the debentures differ somewhat from those relating to the guaranteed mortgages. The debentures were secured by stocks, bonds, mortgages, and other collateral belonging to the Lombard Investment Company, and in them the company had an equity of redemption. This equity of redemption was sold in judicial proceedings and purchased by Stillman, Crapo, and

Hipple, and the sale to them was confirmed on January 28, 1896. After that date, the Lombard Investment Company had no interest of any kind in these securities. Later the interest acquired by Stillman and his companions was conveyed to the Lombard Liquidation Company, which was the owner of the equity of redemption in these securities at the time Hagerman, the trustee for the debenture holders, brought a suit to foreclose such equity and to sell the securities. A final decree in that suit was entered on May 22, 1902. It adjudged that, unless the sum found due upon the debenture bonds was paid by the Lombard Liquidation Company within five days, the securities should be sold by a commissioner at public auction upon terms stated in the decree. The Lombard Liquidation Company did not redeem, and on July 1, 1902, the securities were sold at public auction as provided by the decree to Henry C. Flower. This sale was confirmed on July 3, 1902.

The Lombard Liquidation Company had been organized some years before, for the purpose of buying all the assets of the Lombard Investment Company. Its equity of redemption in the debenture securities, as has been seen, was entirely lost. It appears, however, that, under some arrangement between Flower and the Liquidation Company, it afterwards acted as trustee for such debenture holders as saw fit to join in a plan proposed for realizing upon the securities. The Keene Bank and the Cheshire Bank surrendered their debentures to the Liquidation Company, receiving from it certificates showing its interest in the securities. Upon these securities sums were afterwards paid by the Liquidation Company as the securities bought by Flower were sold. For example, on the certificate held by the Cheshire Bank for series H there was paid on July 27, 1903, $430, and on February 11, 1904, $430. It is these amounts which Ramsden says should be applied in reduction of the set-offs.

But the case as to the debentures stands in the same way as does the case as to the guaranteed mortgages. The Lombard Investment Company was completely foreclosed of any interest in these securities on January 28, 1896. The Lombard Liquidation Company was organized by creditors for the purpose of handling the securities. There is no evidence that the Lombard Investment Company was in any way interested in the Lombard Liquidation Company or that it was entitled to any sum from the securities after the creditors had been paid in full. It is almost impossible to believe that a contract such as appellant claims existed would be made, for the Lombard Investment Company was in hopeless bankruptcy and paid less than 1½ per cent. to its creditors. It follows that there was no trust or fiduciary relation of any kind between the Lombard Liquidation Company and the Lombard Investment Company.

The appellant says that the claims of the two banks are presented to a court of equity, and that it is inequitable not to reduce them by the amounts shown to have been received by the banks. These additional sums were realized from acts done by the banks with which neither Ramsden nor the Lombard Investment Company had anything to do. There was no relation of any kind between the Invest-

ment Company and the banks after the sales, and no agreement with reference to the profits which might be made upon the property bought at foreclosure sale. What the causes were which produced these profits does not appear. In the Scanlon Case they may have been due to the work which the owners did after the sale in draining and improving the land. When considering this branch of the case, it is proper to say that Ramsden's father was the principal officer of the company in England, charged with the sale there of its securities. Ramsden after the receivership, and for what amount does not appear, bought the claims which are now the basis of his suit at law, from persons who were the original creditors of the Lombard Investment Company, a position which Ramsden himself, so far as appears, never occupied. The claims so assigned were based upon guaranteed loans and debentures, and were proved before the master in the receivership suit.

[2] Under the decision of the Kansas Supreme Court, in determining the liability of the banks upon their stock, interest should be computed only from the commencement of Ramsden's suit at law. Pine v. Western National Bank, 63 Kan. 462, 65 Pac. 690. The suggestion of the appellant that certain evidence was erroneously admitted is answered by saying that there was a subsequent waiver by him of the exceptions then taken.

It is contended that there was no proof in this case of the liability of the Lombard Investment Company upon the debentures and guaranteed notes. An examination of the answers, however, shows that this fact was expressly admitted, the only issue raised being as to the ownership of the securities by the banks at the time these bills were filed. As to that ownership, there was abundant evidence.

[3] Appellant also contends that the claims of the banks are barred by the statutes of limitation. To this contention there are several answers, but it is necessary to mention only one. In Pierce v. Security Co., 60 Kan. 164, 165, 55 Pac. 853, the court said:

"The claim of the stockholder is not a set-off in its technical legal sense, but it is an equitable defense which he is entitled to make."

While the statutes of limitation run against causes of action, they do not run against defenses. In the case of Williams v. Neely, 134 Fed. 1, 67 C. C. A. 171, 69 L. R. A. 232, this court held that a claim set up in a bill similar to those presented here by the Keene Bank and the Cheshire Bank was not affected by statutes of limitation because it constituted an equitable defense.

Nor can the defense of laches be sustained against these bills. All of the claims held by the two banks were proved before the master in the receivership suit probably prior to 1896. All of the guaranteed loans and all of the debentures were presented as defenses in the action at law which Ramsden commenced in 1898. The statement to the contrary by the appellant in his brief is not sustained by the evidence. Whether they were all pleaded in that action cannot be ascertained, because the said pleadings are not found in this record. Appellant says that the Keene Bank has injected into this suit three debentures, Nos. 1,543, 1,549, and 1,550, ag-

gregating the sum of $11,000 which it claims that that bank did not hold at the trial of the action at law. This statement is shown to be untrue for the testimony of Litchfield given at that trial names the bonds above numbered as being then held and owned by the Keene Bank.

It is not necessary to go into a computation to show that the amount due the banks upon their respective claims is greater than the amount of their respective liabilities, for the appellant says in his brief:

"If the payments are to be credited upon the alleged set-offs, then the computation submitted herein by appellant is correct. If, however, the rule adopted by the Circuit Court is to be followed, then without question practically all of the debenture bonds (although many of them are paid), and all of the deficiency judgments (although many of them are also paid), would more than equal the liability of appellees as stockholders in the insolvent Lombard Investment Company."

In each case the decree of the court below is affirmed with costs.