No. 23,439.

THE COUNTY OF McPHERSON, *Appellee,* v. THE UNITED STATES
RAILROAD ADMINISTRATION and THE CHICAGO, ROCK ISLAND &
PACIFIC RAILWAY COMPANY, *Appellants.*

SYLLABUS BY THE COURT.

1. APPROACHES TO RAILROAD CROSSING — *Duty of Railroad to Maintain — Insufficient Evidence—Deficiency Supplied by Defendant.* Error in overruling a demurrer to the plaintiff's evidence because of failure to prove material facts will not compel a reversal of the judgment where the defendant afterward introduces evidence and his evidence establishes the facts that should have been proved by the plaintiff.

2. TRIAL—*Finding—Evidence.* The findings of fact were supported by sufficient evidence.

3. APPROACHES TO RAILROAD CROSSING—*Must Be Repaired and Maintained by Railroad Company.* Under section 8462 of the General Statutes of 1915, it is the duty of a railroad company to replace a bridge that has been destroyed by high water where the bridge constitutes a part of the approach of a public highway to the crossing of the railroad track, and the erection of the bridge has been made necessary by the construction of the railroad.

4. SAME. Where such a bridge as is described in the third paragraph of this syllabus was first built in 1887 and has been maintained continuously from that·time until the present, including the period of federal control during which time the bridge is destroyed by high water, judgment may be rendered against the railroad company for the cost of reconstructing the bridge.

Appeal from McPherson district court; FRANK F. PRIGG, judge. Opinion filed January 7, 1922. Affirmed.

*Luther Burns, J. E. DuMars,* both of Topeka, and *P. J. Galle,* of McPherson, for the appellants.

*Alex S. Hendry,* county attorney, for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: The plaintiff commenced this action under section 8462 of the General Statutes of 1915 to recover the cost of rebuilding and repairing a bridge situated principally on the right of way of the Chicago, Rock Island and Pacific Railway Company. Judgment was rendered for the plaintiff, and the defendants appeal.

The petition alleged that the bridge constituted a part of the approach to a crossing of the railroad and a public highway; that the bridge was washed out by high water; and that the plaintiff expended $764.33 in rebuilding and repairing it. A verified account of the bill for material and work was attached to the petition. The plaintiff introduced a plat or map of the immediate vicinity of the bridge, introduced the verified account, and rested. The defendants

each demurred to the plaintiff's evidence.   On the demurrer, the court made the following statement:

"Let the record show that the demurrer to the evidence of the plaintiff will be first considered by the Court, and that any evidence introduced by the defendant will not be considered until the demurrer shall be determined.  In case the demurrer should be overruled the evidence of the defendants will then be considered and passed upon.   You may proceed with that in the record, gentlemen.  It cannot prejudice you."

The defendants then introduced their evidence.   Findings of fact and conclusions of law were made by the court as follows:

"1. The grade of defendant railway company at the crossing in question is about six feet above the natural level of the land at the crossing.

"2. At the time the railway company made its fill across said highway there was a culvert or bridge across Bull Creek practically where the present bridge is, and said culvert or bridge was about five feet lower than the present bridge and about two feet above the natural level of the bottom land just south of said culvert.

"3. Soon after the railroad grade was built at said crossing a fill was made in the highway, and a new bridge was built at about the same grade with the present bridge.

"4. The bridge built at or about the present grade was built in 1887 and shortly after the railroad crossing was put in, and said bridge was destroyed by a flood and the present bridge was built and paid for by McPherson County.

"5. Demand was made by the plaintiff on the agent at the depot in McPherson by the plaintiff to repair said bridge, and the bridge was never repaired by the defendants or any of them.

"6. The bridge across Bull Creek is on the right of way of the defendant railway company a very small corner which is cut by the right of way line.

"7. The approach to the crossing at the time the grade was built would extend beyond and include the bridge across Bull Creek.

"8. It was necessary in order to make a proper approach to make the fill in the highway from the railroad crossing to the bridge and to build the bridge at practically the present height.

"CONCLUSIONS OF LAW.

"1. When a railroad crosses a highway on a fill that puts it above the level of the highway as it was constructed before the railroad was built then the railroad company is bound in law to construct an approach to within ten feet of the railroad crossing to such a distance as may be necessary to reach the highway below, and not make the grade more than seven and one-half per cent.

"2. The bridge in question being a part of the approach to the railroad crossing, it was the duty of the railroad company under Section 8462, General Statutes of 1915, to repair said bridge or rebuild it when it was destroyed by flood.

"It follows that the plaintiff is entitled to judgment for the cost of rebuilding said bridge."

1. It is urged that "the court erred in overruling the demurrer of the defendants to the evidence of the plaintiff." It may be safely said that the demurrers should have been sustained. Facts which were necessary for the plaintiff to establish were alleged in the petition, and no evidence was introduced to prove them. After the defendants had introduced their evidence, the court made the special findings of fact and conclusions of law, and rendered judgment for the plaintiff. It does not appear that the demurrers of the defendants to the evidence of the plaintiff were either sustained or overruled. By rendering judgment for the plaintiff, the court in effect overruled those demurrers. The situation must be considered as if they had been overruled at the time they were filed. The evidence of the defendants tended to prove the facts that should have been established by the plaintiff. The rule has been declared by this court that where a demurrer to the plaintiff's evidence has been erroneously overruled, and the evidence of the defendant establishes the facts that should have been proved by the plaintiff, the error is not prejudicial. (*A. & N. Rld. Co. v. Reecher*, 24 Kan. 228; *Goddard v. Donaha*, 42 Kan. 754, 22 Pac. 708; *Stephens v. Scott*, 43 Kan. 285, 23 Pac. 555; *Osburn v. Moore*, 108 Kan. 90, 91, 193 Pac. 892.) The judgment in this action should not be reversed for the error committed in failing to sustain the demurrers.

2. The defendants urge that the fifth, sixth, seventh, and eighth findings of fact were not sustained by the evidence. With this contention, the court cannot agree. The evidence introduced by the defendants sustained each of these findings, but because of the importance of the eighth finding, the evidence to support that finding will be summarized. The evidence tended to prove that before the railroad was built the county maintained a culvert in the highway at Bull creek; that the top of the culvert was a number of feet lower than the top of the bridge that was afterward constructed; that then the surplus water in Bull creek flowed across the land south of the culvert; that when the railroad was built, it was necessary to throw up a grade along the south side of Bull creek; that the grade prevented the surplus water from flowing over the ground south of the creek; that it then became necessary to build a bridge; that the grade of the railroad on the south side of Bull creek was six or eight feet above the highway; that this made it necessary to grade the approach on the north side of the railroad; and that to build that

approach, it was necessary to build the bridge. This was sufficient to support the eighth finding of fact.

3. The defendants urge that "the legal conclusions as found by the court are not sustained by the law" and that "the judgment is contrary to law." These propositions are the real foundation for this appeal and may be considered together. Section 8462 of the General Statutes of 1915, and section 1 of chapter 242 of the Laws of 1919, amending section 8462, in part read:

"It is hereby made the duty of every person or corporation owning or operating any railroad crossed by a public highway to make and keep in good repair, good and sufficient crossings for such road over their tracks, including all the grading, bridges, ditches, and culverts that may be necessary to make a safe crossing as hereinafter provided."

(It does not clearly appear whether the bridge was washed out before or after April 7, 1919, the date on which chapter 242 of the Laws of 1919 took effect.) By this statute, whenever it becomes necessary to grade, bridge, or ditch in making an approach to a railroad crossing, it is incumbent on the railroad to do that work. It is as much the duty of the railroad to build a bridge if needed as a part of the approach as it is to throw up a grade.

The defendants argue that if the railroad had not been built, it would have been necessary for the county to build a bridge across Bull creek, and that therefore the defendants are not liable. They cite *State, ex rel., Lancaster Co. v. C., B. & Q. R. Co.*, 29 Neb. 412, where it is said that:

"The public authorities are required to build that part of the highway within the right of way which they would have been required to make had the railroad not been constructed." (Syl. ¶ 2.)

That principle was adhered to by the supreme court of Nebraska in the case of *Missouri P. R. Co. v. Cass County*, 76 Neb. 396. In *City of Iola v. Railway Co.*, 97 Kan. 242, 155 Pac. 45, this court said:

"A railway company which constructs a railroad over a street of a city is bound not only to make a suitable crossing, but to maintain the same as long as it continues to occupy the street, and to that end it may be required to build and maintain a bridge at the crossing of a highway if such a structure is rendered necessary by the construction of the railroad." (Syl. ¶ 2.)

This argument is avoided by the eighth finding of fact where the court in effect found that the bridge was made necessary by the building of the railroad.

4. This action was commenced October 21, 1919, against the United States Railroad Administration; on October 31, 1919, the petition was amended by making Walker D. Hines, director-general of railroads, a party defendant; on December 5, 1919, an amended petition was filed, making Walker D. Hines, director-general of railroads, and The Chicago, Rock Island and Pacific Railway Company parties defendant. It is urged that the judgment should have been against the director-general only, and should not have been against the railroad company. At the time the bridge was washed out, and at the time the action was commenced, the railroad was under federal control; but since that time the railroad has been released from that control and is now being operated by the railroad company.

Section 10 of the federal control act (40 U. S. Stat. 456, Act March 21, 1918, ch. 25) contains the following language:

"That carriers while under Federal control shall be subject to all laws and liabilities as common carriers, whether arising under State or Federal laws or at common law, except in so far as may be inconsistent with the provisions of this Act or any other Act applicable to such Federal control or with any order of the President. Actions at law or suits in equity may be brought by and against such carriers and judgment rendered as now provided by law; and in any action at law or suit in equity against the carrier, no defense shall be made thereto upon the ground that the carrier is an instrumentality or agency of the Federal Government. . . . But no process, mesne or final, shall be levied against any property under such Federal control."

In *Mo. Pac. R. Co. v. Ault,* decided by the United States supreme court June 1, 1921, this language is found:

. "The plain purpose of the above provision was to preserve to the general public the rights and remedies against common carriers which it enjoyed at the time the railroads were taken over by the President, except in so far as such rights or remedies might interfere with the needs of Federal operation. The provision applies equally to cases where suits against the carrier companies were pending in the courts on December 28, 1917; to cases where the cause of action arose before that date and the suit against the company was filed after it, and to cases where both cause of action and suit had arisen or might arise during Federal operation." (41 Sup. Ct. Rep. 593, 595.)

4 A. L. R. 1710-1714 contains an extended note on the "Right of action against public utility." This language is there found:

"Under the Act of Congress of March 21, 1918, and the Joint Resolution of July 16, 1918, no restriction is placed upon the right of action against public utilities while under Federal control. Whatever uncertainty may exist from the interpretation of the orders of the Director General of Railroads as to the

proper forum and other restrictions attempting to impede the rights of litigants, it is generally conceded that a right of action remains unimpaired."

A supplemental note is found in 8 A. L. R. 983-987, the first paragraph of which in substance repeats the above-quoted language. See, also, annotations in 10 A. L. R. 976, 11 A. L. R. 1453, and 14 A. L. R. 236. In the last note is found this language:

"According to the recent cases no judgment should be rendered against a carrier in a cause of action arising during federal control."

If "actions at law or suits in equity may be brought by and against such carriers and judgments written as now provided by law," judgment in this action ought to be rendered against the railroad company. This cause of action arose during federal control of the railroads but was not caused by that control, nor did the cause of action arise out of such control. The obligation that is sought to be enforced arose when the railroad was built, has existed continuously from that time to the present, and no reason has been shown why the judgment was not properly rendered against the railroad company.

The judgment is affirmed.