No. 32,884

THE CITY OF GARNETT, *Appellee,* v. ED DOWIS, *Appellant.*

(61 P. 2d 913)

November 7, 1936.

*John K. Bowman,* of Garnett, for the appellant.

*J. Q. Wycoff,* of Garnett, for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This is an appeal from a conviction for violations of an ordinance of the city of Garnett.

Defendant was convicted on three counts for violations of a pool-hall ordinance. The information charged operation without a license, operation in a basement, and operation on Sunday. Defendant's complaint is directed mainly against the overruling of his demurrer to the city's evidence and to instructions given. Defendant does not contend a license was obtained or that the pool hall was not operated in a basement, nor does he deny it was operated on Sunday. His first complaint is the evidence did not show the place to be a public pool hall. The city counters with the contention the place was essentially a public pool hall and that the particular scheme employed was merely a device to evade the city ordinance. It contends these questions were rightfully submitted to the jury under proper instructions.

The material facts disclosed by the city's evidence were substantially as follows: The defendant operated a barber shop on the south side of the city square, and the pool hall was located in the basement; parties had played there as late as four-thirty o'clock on a Sunday morning; it was understood to be a club; members of the club played on the strength of their membership tickets; they used tickets to play and were required to pay for each game played; the difference between this and other clubs was that in the latter they paid an annual fee which entitled them to play without additional pay and the lodge maintained the club; there was some evidence no one except members had ever been seen to play at this club, but the witness did not know whether the general public could play there or not; membership in the club cost twenty-five cents, and it was accompanied with three tickets which entitled the member to play three games, and thereafter the member purchased tickets from the defendant, by paying cash; a member testified he paid no money for the upkeep of the club except what he paid for tickets which entitled him to play.

If the foregoing evidence of the city was insufficient to sustain the public character of the place, the defense supplied the deficiency. It has been frequently ruled by this court that where plaintiff's evidence is insufficient, and a demurrer to plaintiff's evidence is erroneously overruled, and defendant supplies the deficiency, the

error is not prejudicial. (*Simpson v. Kimberlin,* 12 Kan. 579; *Railroad Company v. Doyle,* 18 Kan. 58; *A. & N. Rld. Co. v. Reecher,* 24 Kan. 228; *Goddard v. Donaha,* 42 Kan. 754, 22 Pac. 708; *Stephens v. Scott,* 43 Kan. 285, 23 Pac. 555; *Railroad Co. v. Cross,* 58 Kan. 424, 49 Pac. 599; *Pine v. Bank,* 63 Kan. 462, 65 Pac. 690; *Railway Co. v. Bentley,* 78 Kan. 221, 93 Pac. 150; *McPherson County v. Railroad Co.,* 110 Kan. 274, 203 Pac. 912; *Stoutenberg v. Gaston,* 131 Kan. 610, 293 Pac. 385; *Kansas City v. Burns,* 137 Kan. 905, 22 P. 2d 444.) A resolution and minutes of a special meeting of the club were introduced by defendant which tended to disclose the public character of the club. The pertinent part of the resolution reads:

"Owing to the fact that we have several pool, billiard and card clubs in the city of Garnett for social entertainment, *that do not reach many people of the city,* who are demanding entertainment of the wholesome kind; we hereby mutually agree to organize a club in said city for such purpose to be operated under such rules *as will inure to the benefit of the community and keep its young men off the streets."*

It thus appears there existed before the formation of this club, pool-hall clubs which were restricted in their character. They reached few people in the city. The purpose of this club was to remedy that precise condition. This club was to be so operated as to inure to the benefit of the community. Furthermore it was to keep, not certain young men, but the young men of the community, off the streets.

The minutes of a special meeting, held under date of July 29, 1935, also introduced by the defense, do indicate that originally it was planned that members should be privileged to play without charge. This plan apparently did not succeed and members were required to buy tickets just as any person bought tickets at any other pool hall. After the first three tickets were exhausted, which were received with the twenty-five cent membership card, the member was obliged to pay in order to play.

Whatever significance might be attached to the twenty-five cent membership privilege in this club, the jury undoubtedly believed a restricted membership was not the controlling motive or purpose of the organization. Defendant's witness, the secretary and treasurer of the club, testified: "The issuing of memberships is left to the man managing it. He issues memberships to anyone he sees fit." Furthermore, the underlying purpose being one of general welfare, namely, "To benefit the community and keep its young men off the

streets," it naturally follows the place was not private in character. The evidence concerning the public character of the pool hall was ample. In fairness to this club, it must be said the evidence disclosed it was conducted in splendid fashion. There was no complaint of disorder or rowdyism. This fact, however, did not deprive it of its public character.

Defendant also contends the court erred in its instructions. The substance of the complaint is the court submitted to the jury the question of whether the plan under which the pool hall was operated was a subterfuge to escape the provisions of the ordinance. There was nothing wrong with these instructions. That was the gist of the question to be determined and it was properly submitted. It is also urged the words "scheme and subterfuge," employed in the instructions disclosed the prejudicial attitude of the court. Neither the trial court nor the instructions are subject to that criticism. As stated, the terms employed made clear to the jury the specific issue involved. The meaning of the terms employed is not ambiguous. They have a clear and well-defined meaning and no doubt were well understood.

The judgment is affirmed.